Barr, assignee, &c. vs. Baker and Baker.

JOHN BARR, ASSIGNEE OF W. T. BARR, vs. WILLIS J. BAKER & MARTIN BAKER.

1. Part failure of consideration, may be pleaded as a defence to an action on a note.

2. If an article be of no value for the purpose for which it was purchased, it will amount to a total failure of consideration.

ERROR to Scotland Circuit Court.

McBRIDE, J., delivered the opinion of the Court.

This was an action by petition in debt, brought by Barr, against the Bakers, in the Scotland circuit court, on a promissory note, payable two years after date, for the sum of four hundred and twenty dollars, and dated the 10th October, 1840.

The defendants filed two pleas; first, that the note was obtained by fraud, covin and misrepresentation; second, that the considerson of said note had failed. The plaintiff filed his replications to the pleas, and issue having been joined, the cause was submitted to a jury, who found for the defendants; whereupon the court entered judgment for the defendants. The plaintiff moved the court to set aside the verdict, and grant him a new trial, which having been overruled, he excepted to the opinion of the court, and has brought the case to this court by a writ of error.

The bill of exceptions shows that after the note sued on had been read in evidence by plaintiff, the defendants introduced as a witness Mr. Hannas, who testified, that on the first morning of the present term of this court, he had a conversation with the plaintiff, who said that he wished to have the trial over, in order that he might go back on Dr. Million. He did not know what was the consideration of the note, nor had he ever heard the plaintiff say what was the consideration; that in the conversation, the plaintiff spoke of a jackass, in connection with

the suit, but what connection there was between the suit and the jack, the plaintiff did not say, nor does the witness know, except that from the conversation with the plaintiff, he understood that the suit was about a jack : that Willis Baker, one of the defendants, had a jack which he kept in the spring of 1843, and 25 or 30 mares were put to him, and that he knew of only six colts from that season ; he personally knew of but 10 mares being put, but understood there were 25 or 30. The jack was a fine looking animal, but he did not consider him worth any thing as a foal getter.

Cross-examined. Said he told plaintiff that he was a witness in the jack case, who replied that he wished the case was over, because if he could not recover of defendants, he would go back upon Million.

Sublett testified that he had kept the jack belonging to Willis Baker, the spring of 1842, when six mares only were put to him, and no colts were produced; he had been accustomed to the keeping of horses, and the jack was well kept; that he knew the jack when Million owned him. Witness went with defendants to the plaintiff to return the jack, after the commencement of this suit; plaintiff refused to take him back and give up the note, because his son William sold defendant the jack, and that he, plaintiff, had nothing to do with it; that William T. Barr, the assignor of the note, resided in Marion county, and the defendants in Scotland. He further stated that when he had the jack in 1842, he had taken him on a conditional purchase, and was to give $200 for him, provided he was a good foal getter; that the jack would have been worth about $200, if he had proven a good foal getter; but after he kept him the season, and found he got no foals, he did not consider him worth any thing, and would not have given three bits for him, and so he returned him to the defendant.

Alread testified, that he had known Willis Baker's jack two or three years; put two mares to him the season of 1843, and got one colt; he understood that 25 or 30 mares were put to the jack that season, and he only knew of six foals; that a good foal getter would get the greater part of the mares put to him with foal, but this jack he did not think worth any thing as a foal getter.

Howerton testified, that he had known the jack of Baker three seasons; the season he stood at Edina was 1841; the season of 1842, Sublett had him, and the season of 1843, he was kept at home; many mares were put him, and but few foals; he put him to several mares himself, and had seen the books kept by Baker in 1843, and that there were 25 or 30 mares entered in the books; that the jack was well kept and in good order; that he considered the jack worth nothing as a foal getter;

that a jack is valuable only for breeding; that his breeding was not worth the expense of keeping him, as he was of no value.

E. Bryant testified substantially the same as Howerton.

E. G. Pratt testified, that in 1810, he knew a jack at that time owned by William T. Barr, and which was then in Marion county; that he saw the jack in the stable, but does not know of his having been let to any mares; he had heard it rumored that Barr sold him for $500 to Baker, but did not know of the sale himself.

Swan testified that he had seen the jack; he is a small one; put two mares to him, had one colt, thinks the jack worth something; does not think him worth much as a foal getter.

The plaintiff then introduced S. Bradshaw, who testified that he knew the jack of Baker's, when he belonged to Million, 6 or 7 years ago; that the jack got three colts; that he did not know how many mares the jack went to; that he had supposed the jack was as good a foal getter as jacks generally are; that the certainty of foal-getting by jacks, generally depends very much upon the manner of keeping them; that it is not sufficient merely to keep a jack in good order, but he must also be managed to correspond with their peculiar nature; that if a jack is kept up in the stable too much he will not be so sure a foal-getter as if he had more room to play about in; whilst Million had the jack, Mr. McCracken put one mare two successive years, and had a colt from each season.

Glover testified that his father put 3, 4 or 5 mares to Dr. Million's jack, and had but one foal; he had put about the same number of mares to another jack, and had but two colts.

The plaintiff then moved the court to instruct the jury as follows:

That if they believe from the evidence that the defendant purchased the jack, without taking a warranty, and there was no fraud in the sale, the purchaser buys at his own peril, and they should find for the plaintiff.

Which was refused, and the plaintiff excepted.

The defendants then moved the court to instruct the jury as follows:

1. If they shall believe from the evidence in the cause that the note sued on was given by the defendants, Baker & Baker, for the price of a jackass sold to the defendants by William T. Barr, the assignor of the note, and that said jack, at the time of said sale, was wholly valueless, they should find for the defendants.

2. That if they shall believe from the evidence, that William T. Barr, at the time of the sale of said jack, knew that said jack was defective as a foal getter, and was wholly valueless; and that said Barr conceal-

Barr, assignee, &c., vs. Baker and Baker.

ed from the defendants these facts at the time of the sale, this is such a fraud upon the defendants as ought to defeat the plaintiff's action.

3. That if they shall believe from the evidence that William T. Barr stood said jack one season, that is a circumstance from which the jury may infer said Barr's knowledge of the qualities of said jack.

4. That if W. T. Barr, at the time of the sale, knew that said jack was so deficient as a foal getter, as to be valueless from some secret cause not perceptible to a person of ordinary vigilance and prudence, that good faith required Barr to disclose these defects to the defendants before the sale.

5. That if they shall believe that the jack sold was wholly valueless, no return or offer to return the jack was necessary in order to entitle the defendants to avail themselves of the defence or failure of consideration:

Which were given by the court, and the plaintiff excepted.

The plaintiff then asked the court to instruct the jury as follows:

1. If the jury believe from the evidence that the jack was the consideration of the note, and was worth any thing, and that the defendant has failed to give notice of his defects in a reasonable time to the plaintiff, or to return the same, then he is presumed to have acquiesced in the defect, and is not entitled to any deduction from the amount of the note.

2. If the jury believe from the evidence that there was no fraud used by the plaintiff to effect the sale, no deduction should be made from the amount of the note, because the jack was not a sure foal getter, unless the defendants gave the plaintiff, in a reasonable time, notice of the defect or offered to return him.

3. That if the defendant purchased the jack in dispute, on his own judgment, and without fraudulent and false representations from plaintiff, then the jury should find for plaintiff, unless the defendants gave notice of the defects or offered to return him.

4. If the jury believe from the evidence in the cause, that the defendant, Baker, had an opportunity to examine the jack before he bought him, and did not require a warranty, that he is without redress unless he can show a fraudulent concealment or misrepresentation.

Which were given by the court, and the defendants excepted.

It is assigned for error that the first instruction asked for by the plaintiff, and refused by the court, should have been given. That instruction asserts the broad principle that in the sale of a chattel, made without fraud or warranty, the vendee purchases at his peril. This is abstractly true, as is abundantly shown by the authorities referred to in

the plaintiff's brief, and as we think is fully recognized by the court in several of the instructions given to the jury. The defendants rely upon two grounds to defeat the plaintiff's recovery ; *first*, fraud in the sale of the jack, and *second*, a failure of the consideration for which the note was given.

The second and fourth instructions given at the instance of the defendants, and the second, third and fourth instructions, given at the instance of the plaintiff, refer to the defence under the plea of fraud, and present fully to the jury that question, and in a manner more easy of application than in the instructions refused by the court. Fraud is a generic term, and embraces all of the multifarious means which human ingenuity can devise, and are resorted to by one individual to get an undue advantage over another, by the *suggestio falsi*, or the *suppressio veri*. Prof. Tucker, in his notes, says "fraud is infinite ; judges could not, if they would, lay down as a general proposition what constitutes fraud, or establish any invariable rule which should define it. And even if they could distinctly mark out how far courts of equity would go in relieving against it, or define strictly the species of evidence of it, the jurisdiction would be cramped and perpetually eluded by new schemes which the fertility of man's invention would contrive. All surprise, trick, cunning, dissembling, and any unfair way by which another is cheated is fraud ; the only boundaries defining it are those which limit also human knavery and human ingenuity." Such being the character of fraud, the instruction refused could not have aided the jury much in forming their verdict.

The second ground of defence, to-wit : the failure of the consideration of the note, was properly placed before the jury by the other instructions given. It has long been a mooted question, how far, or to what extent there must have been a failure of consideration, to enable a party to set it up in an action at law. But it may now be considered as settled in this State, that part failure of consideration may be pleaded to an action at law on a note. See 6 Mo. R. 415, Ferguson vs. Huston and 7 Mo. R. 509, Wade vs. Scott. If the article which forms the consideration of the note be worthless, *for the purpose for which it was purchased*, the consideration has wholly failed, although it may be of some value for another purpose. How far the evidence established this fact, was a question exclusively for the consideration of the jury—there was evidence conducing to show that the jack, as a foal-getter, was of no value, and that it was for his qualities as such that the defendants were induced, no doubt, to give the extravagant sum of $420 for him.

The other Judges concurring herein, the judgment of the circuit court is affirmed.