## JOSEPH JACQUIN

*v.*

## GEORGE S. WARREN.

1. PROMISSORY NOTE—*what constitutes.* The following instrument was held to be a negotiable promissory note, under our statute, and should be stamped as such:

"$525.                                        CONGER, August 23, 1865

"Due G. S. Warren on corn five hundred and twenty-five dollars."
                                                    "J. JACQUIN."

2. STAMP ACT—*who may object that an instrument is not properly stamped*
In an action upon a promissory note, against the maker, it appeared the instrument bore a revenue stamp, but not adequate to the character of the paper, and it being the fault and omission of the defendant, who made the note, he was not allowed to take advantage of his own wrong and default, by objecting to its being received in evidence on that account.

SAME—*unstamped instrument admissible under the common counts.* A promissory note, though it be inadequately stamped, is admissible in evidence under the common counts.

4. RESCISSION OF A CONTRACT *by one party — the other may acquiesce — estoppel as applied to the former.* A party sold a quantity of corn in cribs, and there was a constructive delivery to the buyer, and after he had taken away a portion of the corn, the seller gave him notice that he could have no more of it. It was *held,* that the buyer had a right to acquiesce in this claim of the seller to control the corn, and doing so, he might well refuse to pay for such portion as he had not received. It was similar to a case of equitable estoppel. And, in a suit by the seller against the buyer upon a note given for the price of the corn, these facts were sufficient to defeat a recovery.

APPEAL from the Circuit Court of Woodford county; the Hon. S. L. RICHMOND, Judge, presiding.

The opinion of the court contains a sufficient statement of the case.

Messrs. INGERSOLLS & PUTERBAUGH, for the appellant.

This was an action upon a due-bill given for the unpaid balance of the contract price of a lot of corn purchased by the maker from the plaintiff. The corn had been only constructively delivered, in cribs, and after a portion of it had been taken away by the buyer, the seller notified him that he could have no more of it, and in this claim of the seller to control the corn, the buyer acquiesced. The only question presented on the merits of the case is, whether the seller can recover on the due-bill after refusing to let the maker have the corn for which it was given.

In all cases whatever, a promisor will be discharged from all liability when the non-performance of his obligation is caused by the act or fault of the other contracting party. 2 Parsons on Cont. (5th ed.) 676; *Phillpolts* v. *Evans,* 5 M. & W. 477; *Ripley* v. *McClure,* 4 Exch. 345; *Leigh* v. *Paterson,* 2 J. B. Moore, 588.

Generally, as a contract can be made only by consent of all the contracting parties, it can only be rescinded by the consent of all. But this consent need not be expressed as an agreement. 2 Parsons on Cont. 677, 678. The rescission by one party may be as strongly expressed by acts as by words. *Goodrich* v. *Lafflin,* 1 Pick. 57; *Hill* v. *Green,* 4 id. 114.

If either party, without right, claims to rescind the contract, the other party need not object, and if he permit it to be rescinded, it will be done by mutual consent, nor need this purpose of rescinding be expressly declared by the one party in order to give to the other the rights of consenting, and so rescinding. There may be many acts from which the opposite party has a right to infer that the party doing them would rescind. 2 Parsons on Cont. (5th ed.) 658, 678, and cases there cited; *Goodrich* v. *Lafflin*, 1 Pick. 57; *Hill* v. *Green*, 4 id. 114.

Messrs. JOHNSON, HOPKINS & CHITTY, for the appellee, contended that the corn was sold and delivered, and the title vested in the buyer, and that any subsequent notice by the seller to the buyer not to remove the corn, was wholly nugatory as to the rights of either of them. The buyer had no right to treat the contract as rescinded by such a notice, as a contract cannot be rescinded after it is executed.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit brought in the Woodford Circuit Court by George S. Warren against Joseph Jacquin, and a verdict and judgment for the plaintiff.

The declaration in the first and second counts, counted on the following due-bill:

"$525.                                    CONGER, August 23, 1865.
"Due G. S. Warren on corn five hundred and twenty-five dollars.                                    J. JACQUIN."

The common counts were added.

The pleas were, the general issue; failure of consideration in whole and in part; breach of warranty; failure to deliver corn under the contract; tender; payment; to all which were replications and issues joined. There was a trial by jury and a verdict for the appellee for three hundred and ninety-five dollars. When the due-bill was offered in evidence it was objected to by defendant for the reason it had no revenue

stamp, but the objection was overruled and exception taken. A motion for a new trial was made and overruled and judgment on the verdict for the plaintiff, from which the defendant has appealed to this court.

The following are the errors assigned:

The Circuit Court erred in admitting the due-bill in evidence, the same not being stamped as required by law. The court below admitted improper evidence. The court gave improper instructions for plaintiff. The court below erred in refusing instructions numbers one and two, asked by defendant. In modifying instructions numbers three and six, asked by defendant. In overruling motion for a new trial, and in giving judgment on the verdict of the jury.

Upon the first error assigned it is sufficient to say, that the paper offered in evidence bears a revenue stamp, and though perhaps not adequate to the character of the paper, it was the fault and omission of the defendant who made the due-bill, that it was not, and he should not be allowed to take advantage of his own wrong and default. The paper was a negotiable promissory note under our statute, and should have been stamped as such. *Stewart et al.* v. *Smith*, 28 Ill. 397.

But if it was the duty of the court to exclude the due-bill from the jury, still the common counts remained, and the evidence was received to sustain them. *Israel* v. *Redding*, *ante*, p. 362, and cases there cited.

The next error assigned, that improper evidence was admitted, without averring it was against appellant, is abandoned.

As to the instructions given on behalf of the appellee and exception taken by appellant, and in regard to those asked by appellant and refused, it is sufficient to say, from the view we have taken of the case, it is unnecessary to consider and dispose of them.

We have considered the case on the refusal of the court to set aside the verdict and grant a new trial, and this involves an examination of the evidence which is all preserved in the record.

The facts are, substantially, that appellee, in August, 1865, being the owner of certain cribs of corn, went to appellant to

sell them to him; appellant wished to buy and offered forty cents a bushel; appellee wished to sell the whole lot together, and after getting the dimensions of the cribs as given to him by appellee, and casting up the amount of corn the cribs would contain, which was about 1,700 bushels, appellant offered appellee six hundred and fifty dollars for the whole lot; appellee offered to take six hundred and sixty dollars for the lot, to which appellant agreed; the cribs of corn were on the place owned by appellee's father; the corn was in good condition, the cribs being covered with boards, and it was agreed appellant should get the corn whenever he wanted it; appellee said the boards which covered the cribs belonged to his brother John who would take them off when he wanted to use them; appellant paid appellee on the contract one hundred and thirty-five dollars and gave the due-bill in question for the balance, and paid one hundred and thirty dollars on it, which was credited on the due-bill. These were the statements of appellee.

It was also proved by an employee in appellant's warehouse at Conger, who weighed the corn appellant hauled away from the cribs, that the whole amount was seven hundred and nine bushels and ten-hundredths. In the month of October, the warehouse was destroyed by fire. The most of the corn was brought in by teams before the fire; three loads were received after that time.

Another witness, Farrow, stated, that, sometime after the destruction of the warehouse in the month of October, he and two others went out after some of this corn, and got three loads from the cribs and started home with them; and just after they had turned into the Metamora road into the lane leading to Conger, they saw appellee coming up the road from the direction of Metamora. He turned off into the lane in which the teams were going, and stopped them, and asked them if they had seen his brother when they got their loads, and said to them that if he had been there they could not have got the corn, but as they had got it, they might take those loads, but that appellant should have no more; that he had heard appellant was burnt out, and was broke up. He told them to tell

appellant that he should have no more of the corn. When they returned to Conger they delivered this message to appellant. After they had taken out of the cribs these three loads which were the last taken out, two-thirds of the corn was left, if the cribs were full in the first place.

Ninemire corroborates this witness in all particulars.

Other witnesses stated, that while they were at the place where the cribs of corn were in the month of September, threshing out grain for John Warren, they had five horses there, which they fed three times with the corn from the cribs which appellee had sold to appellant; four other horses were fed out of it, at the same time. Neither appellee nor John Warren was present; there was no other corn there but this in the cribs.

Another witness, McCoy, testified for appellant, that before the commencement of this suit, he tendered to appellee, for appellant, twenty-three dollars, as the balance due on the due-bill, which the appellee refused to accept. On his cross-examination, he said appellee stated the amount was not enough to pay for the corn appellant actually got; that he refused to take all the corn; that he bought the corn in the cribs, and the due-bill was for the balance of the purchase-money; that after appellant was burnt out, appellee left word with his brother not to let appellant take away any more corn until he saw appellant, but that he saw him next day, and it was made all satisfactory, and he told his brother not to forbid appellant getting the corn.

John Warren testified that the corn was used by the threshers from the cribs without his authority; he stated that one Thomas Summers hauled a load of corn from the cribs after the three loads were taken away by McNiff, Ninemire and Jackson, through whom the message was sent to appellant not to haul any more of the corn.

McNiff, being recalled, testified that no corn was hauled by Summers, or by any other person for appellant, after the message was delivered that appellant could have no more corn.

There is a trifling conflict of testimony here, which it was the province of the jury to weigh and reconcile; the fact, how-

ever, is indisputable that appellee, after appellant had met a great misfortune in the burning of his warehouse, did send word to him that he must not haul any more of the corn from the cribs. This shows that at that time appellee considered the corn as under his own control and in his possession. It will not be disputed that appellant had a right to acquiesce in this claim, the delivery of the corn having been merely constructive, leaving appellant under no obligation to contest the position taken by appellee. The assertion by appellee of his right to control the corn, was the same as if he had said to appellant that he had taken the corn back into his own possession, and appellant had a perfect right to take him at his word, and refuse to pay for corn he had not received. *Fox* v. *Kitton*, 19 Ill. 519. It is similar to a case of equitable estoppel. *Baker* v. *Pratt*, 15 Ill. 568. The weight of the testimony is, that, after the receipt of this message from appellee, appellant hauled no more of the corn.

The motion for a new trial should have been allowed, as the verdict is manifestly against the law and the evidence. The appellee has recovered a sum of money to which, so far as we can understand from the testimony, he is not entitled.

The judgment is reversed and the cause remanded that a new trial be had.

*Judgment reversed.*