Brockhaus v. Schilling.

H. A. BROCKHAUS, Appellant, v. ERNEST SCHILLING *et al.*, Respondents; and ERNEST SCHILLING, Respondent, v. H. A. BROCKHAUS *et al.*, Appellants.

St. Louis Court of Appeals, December 20, 1892.

1. **Sales**: RESCISSION FOR MISREPRESENTATION: MATTER OF OPINION. In the course of negotiations for the sale of a bar-room and stock of liquors, the seller stated that the liquors would last a certain time. *Held*, that this was merely an expression of opinion and belief, and that, even if it was false, it was not such a false representation as in law entitled a party to the rescission of a contract.

2. ———: ———: DUTY OF DEFRAUDED PARTY. A party, who is induced to enter into a contract through material misrepresentation, cannot maintain an action in equity for the rescission of the contract, where, owing to his failure to act promptly on learning of the misrepresentation, there has been such a change of circumstances that he cannot place the other contracting party *in statu quo*.

3. ———: MATERIAL MISREPRESENTATION BY VENDOR: RECOUPMENT BY VENDEE. Where, in such case, the vendor sues the vendee for the purchase price, the latter may under proper pleadings reduce the recovery by the amount of his damages in consequence of the misrepresentation; but he cannot entirely defeat a recovery, when there is not a complete failure of consideration.

Brockhaus v. Schilling.

*Appeal from the St. Louis City Circuit Court.*—HON.
DANIEL DILLON, Judge.

AFFIRMED.

*Edmond A. B. Garesche*, for appellants.

(1) Where there is a breach of warranty, the
vendee may return the property and rescind the
contract within a reasonable time, or he may retain it,
and, when sued for the purchase money, plead a total
or partial failure of consideration. *Branson v. Turner*,
77 Mo. 489. A failure of consideration may be shown
for the purpose of defeating an action for the price,
even when there has been no notice to the vendor, and
no return, or offer to return the property. *Kerr v.
Haymaker*, 20 Mo. App. 350. (2) The representations
made by respondent Schilling to appellant Brockhaus,
in regard to the average receipts and expenditures of
the business, were false, and entitled Brockhaus to
rescind the sale. Newmark on Sales, sec. 355; 2 Story
on Contracts, sec. 1081. Being false, even though not.
fraudulently made, they authorize a rescission, or
disaffirmance. 1 Wharton on Contracts, sec. 214.
They were the assertion of facts peculiarly within the
vendor's knowledge, and amounted to a warranty.
Newmark on Sales, sec. 357; 2 Benjamin on Sales.
[Am. Notes by Kerr] sec. 817, p. 905; *Carter v.
Black*, 46 Mo. 384; 1 Wharton on Contracts, sec.
219. Even his assertion that the appellant would
have wines, liquors and cigars enough to last him
until the first of January was a fraud, and would
entitle appellant to disaffirm the sale. *Hanger v.
Evans*, 38 Ark. 334. False statements in regard to
the receipts of a public house warrant a rescission.
*Dobell v. Stephens*, 3 B. & C; *Pelmore v. Hood*, 5 Bing.

N. R. 97; *Bowring v. Stephens*, 2 Car. & P. 337; *Pierson v. Wheeler*, Ryan & Moody, 303. The question of reasonable time in which a rescission should take place is generally one of fact. *Johnson v. Agricultural Co.*, 20 Mo. App. 100. (3) Even though it be granted that the trial court was right in holding that appellant was not entitled to affirmative equitable relief, yet this would not deprive him of his right to urge a total or partial failure of consideration in the suit upon the note. This question the trial court entirely overlooked. And in this connection I submit that the finding of the trial court against appellant in the suit upon the note, being against the law under the undisputed evidence, warrants the interference of this court. *Avery v. Fitzgerald*, 94 Mo. 207. This judgment can only be attributed to an oversight or mistake, and should be set aside by this court. *Mauerman v. Railroad*, 41 Mo. App. 348.

*E. T. Farish*, for respondent.

Thompson, J.—The first of these actions is in the nature of a suit in equity to rescind a contract, whereby the plaintiff purchased from the defendant a saloon, fixtures and contents, in the city of St. Louis. This action was brought on the thirteenth of October, 1891. The right of rescission claimed in the petition is predicated upon fraudulent representations, alleged to have been made by the defendant to the plaintiff, whereby the plaintiff was induced to become the purchaser of the saloon. The second of these actions is an action at law on a promissory note for $1,650, made by the defendant, H. A. Brockhaus, on the twentieth of August, 1891, and payable thirty days after date, and indorsed by Ignatz Stock. This note was given in part payment of the purchase money of the saloon

already spoken of. The action on this note was commenced on October 14, 1891, the day following the commencement of the equitable action for the rescission of the contract. The defendant in the action at law set up as a defense to the note the same facts which he had set up as plaintiff in his petition in equity for the rescission of the contract, and concluded with the averment that, by reason of the facts thus stated, the note was wholly without consideration. The two causes were, by consent of parties, consolidated for the purposes of the trial, and the issues of fact involved in them were submitted to the court, the parties waiving a jury. In the action at law the defendant, in order to raise the questions of law on which he predicated his defense against the note, tendered the two following declarations of law, which the court refused to give: "The court declares the law to be that, even though it, sitting as a jury, may believe from the evidence that the defendant made inquiries of other parties concerning the property sold to him by plaintiff, before he paid the full amount of the purchase money and received a bill of sale for it, yet, if the court, sitting as a jury, believes that the plaintiff knowingly made false representations with regard to material facts bearing upon the question of the value of the property sold to defendant, which were relied upon by defendant, and which were one of the inducing causes of the purchase, then its finding must be for defendant."

"The court sitting as a jury declares the law to be that, if plaintiff falsely and fraudulently represented to defendant 'that the saloon sold to defendant was bringing in $35 to $40 a day, and that the expenses of running it were only $22 a day, and that, if defendant purchased it, he would have sufficient wines, liquors and cigars to last him until the first day of January, 1892,' and knew that said representations were not true;

and if the court believes that these representations were made to induce plaintiff to buy, and relying thereon he did buy, or if the court sitting as a jury believes that plaintiff made such representations as of his own knowledge, not knowing them to be true, and defendant purchased the saloon relying thereon, then plaintiff is not entitled to recover."

The court, after hearing the evidence, took the consolidated cause under advisement, and finally rendered judgment for the defendant in the suit in equity, and judgment for the plaintiff in the suit at law on the note. To reverse this judgment Brockhaus, the plaintiff in the suit in equity and the principal defendant in the suit at law, prosecutes the present appeal.

Although these two causes were consolidated, becoming in effect one suit, it seems necessary, in disposing of the questions which arose on the appeal, to treat them as separate causes, in so far as is necessary to get the suit in equity out of the way. The facts substantially were that Brockhaus, the plaintiff in the suit in equity, although he had had no experience in the saloon business, desired to become the purchaser of the saloon and to go into that business. To that end he began negotiations with Schilling, the defendant in the suit in equity, who had a saloon on North Third street in the city of St. Louis, which he was running through the aid of Henry Haskenhoff under an arrangement by which the profits were divided between him and Haskenhoff. Schilling first demanded the sum of $3,000 for the saloon, but, after considerable negotiations, the trade was closed at the purchase price of $2,825. The day on which the bargain was struck was August 17, 1891. On that day Brockhaus paid Schilling $100 as earnest money. On the following morning Brockhaus took possession of the saloon and gave Schilling his check for $1,000 more by way of a cash

payment. He afterwards made a still further cash payment of $75, and finally, on the twentieth of August, gave the note for $1,650, which is the subject of the action at law, and which represents the remainder of the purchase money. This note had thirty days to run. Brockhaus was thus in possession of the saloon from the eighteenth of August, two days prior to the consummation of the trade. The false representations, by reason of which Brockhaus claims a rescission of the contract, consisted of a statement made to him by Schilling that the average receipts of the saloon were from $35 to $40 a day, and also that the stock of liquors and cigars on hand would last until the first of January, 1892. The first of these representations proved to be an exaggeration. The receipts at that time were frequently between $35 and $40 a day, but this was during the summer season when more beer is consumed than in colder weather. For instance, on the eighteenth of August, the first day that Brockhaus took possession, the receipts seem to have been about $38, and on the following day they were between $37 and $39. But books had been kept of the cash receipts of the saloon; and the average receipts, as shown by these books, extending back for a year and a half, amounted to but little over $28 a day.

As to the second statement, that the stock on hand would last until the first of January following, this must be laid out of view as being a mere matter of opinion and belief, and not such a fraudulent representation as in law entitles a party to a rescission of a contract. Exceptional cases might exist, where such a statement might afford ground of rescission; but we are dealing only with the case presented by this record, and this record shows that, before consummating the trade, Brockhaus took to his aid a Mr. Williams, who was an experienced saloon keeper, and that Williams

made a careful inspection of all the stock on hand. From this it is impossible to conclude that Brockhaus could have relied upon this representation of Schilling, even if it were such a representation as would otherwise entitle him to a rescission.

The question, whether the representation that the average receipts amounted to from $35 to $40 a day, which we find from the evidence to have been the representation made, was such a misrepresentation of the existing facts as entitled Brockhaus to a rescission, if other difficulties in the way of a rescission were out of the way, seems to be a close question. There is no ground for the conclusion upon this record that any obstruction was laid in the way of the ascertainment by Brockhaus of the exact fact. Although informed that books had been kept, he did not, prior to the purchase, request the privilege of seeing them; and it appears that he was offered by Haskenhoff the privilege of seeing the day book containing the daily receipts for three months preceding, but declined or neglected it. He never, prior to making the contract, took the pains to inquire of Haskenhoff what the average daily receipts were. He was on the ground, and had every means of ascertaining the exact truth if he had seen fit to do so; and, hence, his failure to do so must be ascribed to negligence. But this failure to do so makes it doubtful whether he regarded the question of the past average daily receipts as an important matter, although the evidence shows that it is an important element of the value of such a property, and whether he thereafter acted in reliance upon this statement of Schilling or not. A memorandum of opinion, filed by the circuit judge, indicates his opinion to have been that Brockhaus did not rely upon this statement of Schilling. But, for the purpose of throwing into clear light the ground on which we feel bound to decide the equitable

branch of the case, we shall assume that this statement of Schilling as to the average daily receipts was such a material misrepresentation of an existing fact, as entitled Brockhaus to a rescission, if he had proceeded promptly after discovering the misrepresentation, and had offered to put Schilling *in statu quo*. Now, the evidence shows that, after Brockhaus entered into possession of the saloon, he kept Haskenhoff in his employ during the remainder of the month of August. Haskenhoff testified at the trial as Brockhaus' own witness. Although, as already stated, Brockhaus did not, before he closed the bargain, take the pains to ask Haskenhoff what the average daily receipts were, yet he did make such inquiry of Haskenhoff after he had bought the place and entered into possession; and Haskenhoff told him that the receipts were about $30, $32 and $35 a day, sometimes more and sometimes less. This, it may reasonably be inferred, was immediately or shortly after he had bought the saloon. When asked when this was, Haskenhoff said: "When he had the place bought already; he never asked me before." Haskenhoff also testified that, before the trade was closed, he told Brockhaus that they had been keeping books, but Brockhaus never asked to see the books.

We take it to be well-settled law that, laying out of view the question of the negligence of Brockhaus in not asking to see the books or not inquiring of Haskenhoff, before the trade was consummated, what the average receipts were, yet he is precluded from maintaining a suit in equity for a rescission, by reason of not disaffirming promptly, and demanding a rescission of Schilling as soon as Haskenhoff conveyed to him this information about the average daily receipts. Instead of doing that, he went on until the note given for the unpaid balance of purchase money had matured,

and then for the first time he demanded a rescission, but not in any formal way.

His testimony on this point is: "*Q.* Now did you make any offer to return this saloon to Schilling? *A.* Yes, sir; I told him he could take the place back.

"*Q.* When did you do that—before you instituted this suit? *A.* Yes, whenever the note was due, at that time,—or before already."

On cross-examination Brockhaus stated that this was before the note fell due. "Schilling came in and asked me if I found everything the way he told me, and I told him no; I would rather he take his place back. That was about the first part of September. I do not remember the date."

The peculiar nature of the property, which was the subject of the sale, was such as required a prompt disaffirmance on the part of Brockhaus, as soon as he discovered that material misrepresentations had been made to him. He was in daily possession and use of the property, and was enjoying the good will of the business and the profits accruing from it. He had already sold a part of the stock which was included in the sale to him. In fact, he could not, after the lapse of such a time, place Schilling *in statu quo*. We have lately gone over the law on the subject of the right to rescind a contract of sale on the ground that the property delivered is not as represented, with the conclusion that no right of rescission exists in such a case where there has been such a change of circumstances, through lapse of time or otherwise, as disables the purchaser from putting the seller *in statu quo*. *Tower v. Pauly*, 51 Mo. App. 75, and cases cited. This we understand to be the general rule of law, not only with regard to the right to disaffirm contracts of sale and sue to recover back the purchase money at law, but also with regard to the right to rescind in equity.

There can be no involuntary rescission, no rescission against the will of the other party to the trade, unless he can be put *in statu quo;* but the party, who otherwise might have the right of rescission, is remitted to his action at law for damages for the deceit. It was upon this ground that the circuit court held that Brockhaus was not entitled to equitable relief under the petition in which he is plaintiff, and we are of opinion that the circuit court rightly held this, and consequently we affirm so much of the judgment as dismisses the suit in equity.

It does not necessarily follow from the foregoing views that Brockhaus was not entitled by way of counterclaim or recoupment to an abatement of Schilling's recovery on the note, to the extent to which he sustained loss through Schilling's fraudulent misrepresentation, if such it is to be regarded. It was a well-settled principle of the common law that a party, who has been induced by the deceitful representations of another to enter into a contract to his injury, may maintain an action to recover the damages which he has suffered by reason of the deceit. *Gerhard v. Bates*, 2 El. & Bl. 476. Under our code of civil procedure a defendant, who is sued upon a written obligation to pay money, may undoubtedly plead by way of *counterclaim* (Revised Statutes, sec. 2050), or to establish a *failure of consideration* in whole or in part (Revised Statutes, sec. 2090), any matter arising out of the contract or transaction, which resulted in the giving of the obligation sued on, and which would furnish an independent ground of action *ex delicto* against the plaintiff for damages for deceit. Under such an answer and in a case like the present, the measure of damages, in respect of which the defendant would be entitled to a recoupment by way of a counterclaim, or to an abatement of the plaintiff's recovery by reason of a failure of consid-

·eration, would be the difference between the value of the property, if the representations of the plaintiff which induced him to purchase it had been true, and the value as it actually turned out to be. A good deal of evidence was given, apparently upon this theory; but the difficulty which we find in dealing with the defense to the action at law consists in the fact, that no instruction or declaration of the law was requested on this theory, and that it was not the theory of the answer. The two instructions which were requested, and which we have already set out, proceed on the ground that the fraudulent representations, if the court should find such to have been made, constituted a complete defense to the action upon the note. Such we do not understand to be the law. Our understanding is that such representations merely entitled Brockhaus to a recoupment, or to an abatement of the recovery on the note, on the theory of a failure of consideration to the extent to which Brockhaus had been *damaged* by reason of the fraudulent representations. If the whole sale had taken place on credit, and the action had been brought for the entire agreed purchase price, instead of being brought for the balance of it represented by this note, the theory of these instructions would result in a total defeat of the action, irrespective of the amount which Brockhaus had lost by reason of the deceit; and, since for reasons already stated there can be no rescission, this would leave him in the possession of the property, while, at the same time, being exonerated from paying for it. The theory of the answer of Brockhaus to the petition on the note, and the theory of these instructions, precludes us from putting the trial court in the wrong in the disposition which it made of the second branch of the case, consisting of the action on the note.

The judgment of the circuit court is accordingly affirmed. All the judges concur.