JULIUS KESSLER, Appellant, v. GEORGE CLAYES, Administrator of the Estate of JOSEPH D. LUCAS, Respondent.

St. Louis Court of Appeals, February 1, 1910.

1. **INSTRUCTIONS: Failing to Hypothesize All the Facts: Appellate Practice: Presumption.** A requested instruction, which fails to hypothesize all the relevant facts in proof, is presumed to have been refused because of such failure.

2. **CONTRACTS: Evidence: Parole Evidence Admissible to Remove Ambiguity in Written Contract.** If the intention of the parties sought to be set forth in a written contract is not clear because of ambiguous language used therein, the ambiguity may be removed and the intention of the parties clarified by parole testimony; and while direct evidence as to the intention of the parties is incompetent, parole evidence is competent to show the parties' situation, the surrounding circumstance and the relation which the words of the writing may bear to facts which constitute the subject-matter of the contract.

3. **BILLS AND NOTES: Evidence: Parole Evidence Inadmissible to Impeach Written Contract.** Parole evidence is inadmissible to vary, contradict, add to, or subtract from, the terms of a written instrument, except in cases where, from fraud, mistake or illegality, it has not acquired original force as a contract.

4. **———: ———: Parole Evidence Inadmissible to Impeach Note.** Under the rule that parole evidence is inadmissible to impeach a written instrument, except in cases of fraud, mistake or illegality, parole evidence is incompetent to destroy the obligation of a promissory note as such and show it to be a mere receipt.

5. **———: Promise to Pay May be Implied.** It is sufficient if the promise to pay in a promissory note is either expressed in words or raised by the law as a necessary implication on an acknowledgment of indebtedness therein contained.

6. **CONTRACTS: Law Enters Into.** The legal import of every written undertaking is a part of the contract as well as the express obligations therein contained.

7. **BILLS AND NOTES: Consideration: Promise to Pay: Facts Stated.** Plaintiff, on surrendering certain stock to decedent, received from him an instrument containing the words, "Good

for $1000 . . . for ten shares Kinloch Jockey Club stock surrendered to the undersigned, . . . by the owner of said stock J. Kessler and for which I am liable. Joseph D. Lucas." *Held*, that the word "surrendered" did not mean mere delivery, but imported a transfer of title, a giving up or making over, a relinquishment of a right or privilege, and that the words "Good for $1000" and "for which I am liable" imported a promise on decedent's part to pay plaintiff $1000 for the stock, so that the instrument contained all the elements of a note, as between the parties.

8. ———: **Requisites.** The essential elements of a note are, that it must be in writing, must contain a promise to pay, either express or implied, that the promise must be for the payment of a certain sum of money absolutely and at all events, that the promise must be unincumbered with collateral agreements to do something else, and that the instrument must indicate with certainty the parties to the contract.

9. ———: **Identity of Payee.** A note sufficiently identifies the payee if it discloses from whom the consideration was received, and the promise is interpreted to be a promise to pay him from whom the consideration moved.

10. ———: **Negotiable: Necessity of Words of Negotiability.** A note in the form "Good for $1000 . . . for ten shares Kinloch Jockey Club stock surrendered to the undersigned . . . by the owner of said stock J. Kessler and for which I am liable. Joseph D. Lucas," is *held* to be a non-negotiable note for the reason it contains no word of negotiability, but *held* to be a promissory note and as such entitled to the prerogatives and attributes incident to such obligations.

11. ———: **Evidence: Parole Evidence Inadmissible to Impeach Note: Consideration May be Contradicted.** Except in cases of fraud, mistake or illegality, or total or partial failure of consideration, parole evidence of a verbal agreement made at the time of, or prior to, the execution of a promissory note absolute on its face is not to be received to qualify, contradict, vary, subtract from or add to its terms; but the consideration is always open to contradiction between the immediate parties to the note, and the want or illegality of consideration may be proved by parole evidence.

12. **APPELLATE PRACTICE: Judgments: Presumption in Favor of.** Since all presumptions are indulged in favor of the judgments of the trial court, in the absence of erroneous declarations of law, such a judgment will be affirmed on appeal, if it may be sustained on any theory of law within the pleadings, although the appellate court is unable to discern the precise ground on which it was given.

13. **PLEADING: Probate Courts: Formal Pleadings not Required.** Formal pleadings are not required in proceedings in probate courts, under section 200, Revised Statutes 1899.

14. ———: ———: **Formal Pleadings not Required in Circuit Court on Appeal.** On appeal from the probate court, no formal pleadings are required in the circuit court, since that court proceeds to try and determine the cause anew, under section 285, Revised Statutes 1899.

15. **BILLS AND NOTES: Failure of Consideration: Evidence Reviewed.** Defendant's decedent gave plaintiff an instrument in the following form: "Good for $10.00 . . . for ten shares Kinloch Jockey Club stock surrendered to the undersigned . . . by the owner of said stock J. Kessler, and for which I am liable. Joseph D. Lucas." In an action on said note, on a review of all the evidence, *held* the stock referred to in said note, together with other stock of like kind, was accumulated for the purpose of depositing it with a trustee who was acting for all the stockholders in a reorganization scheme, and that the equitable title of said stock at least remained in plaintiff, and, therefore, the maker of the note received no consideration therefor from plaintiff.

Appeal from St. Charles Circuit Court.—*Hon. James D. Barnett,* Judge.

AFFIRMED.

*W. G. Schofield* for appellant; *Frank A. Thompson* of counsel.

(1)  (a) The instrument sued on is a promissory note, with actual consideration stated.   McGowen v. West, 7 Mo. 569; Finney v. Shirley, 7 Mo. 42; Brady v. Chandler, 31 Mo. 28; Brainard v. Capelle, 31 Mo. 428; Jacquin v. Warren, 40 Ill. 459; Franklin v. March, 6 N. H. 364; Locher v. Kuechenmiester, 120 Mo. App. 701.  (b)  But this action originating in probate court where no pleadings are required, it is immaterial whether instrument is or is not a promissory note.   Lee v. Dunlap, 55 Mo. 454.   (c)  The consideration, being stock of par value of $1000, was sufficient to support the promise or obligation sued on.   Houck v. Frisbee,

Kessler v. Clayes.

66 Mo. App. 20; Kamp Co. v. Mfg. Co., 64 Mo. App. 117. (d) The instrument sued on recites that it is good for $1000 for stock surrendered. The word "surrender" in law means cancelled or yielded up and a transfer of the title as well as the possession. Buck v. Lewis, 46 Mo. App. 232; Robertson v. Winslow, 99 Mo. App. 546; Evans v. United States, 153 U. S. 591; In re Welling, 113 Fed. Rep. 192; Nolander v. Burns, 48 Minn. 13, 50 N. W. 1016; In re Dronfield, etc., Coal Co., 17 Ch. Div. 76. (e) Upon being indorsed in blank by claimant Kessler, the title passed to the certificates and they partook of the qualities of a negotiable security so as to pass from hand to hand by delivery. Kessler v. Mfg. Co., 43 Mo. App. 84; St. Louis, etc., Co. v. Partridge, 8 Mo. App. 580. (f) The words "and for which I am liable" while superfluous, necessarily refer to $1000. But even if this was not so, the evident intent from a common sense interpretation should be borne in mind. State ex rel. v. St. Louis, 174 Mo. 141. (2) While parol contemporaneous evidence is not admissible to contradict or vary the terms of a valid written instrument, still when the subject-matter therein is not entirely clear, parol contemporaneous evidence is permissible in order that the court may more perfectly understand the intent and meaning of the parties, and the court should not have excluded the offer of evidence on that point. Construction Company v. Tie Co., 181 Mo. 25; Edwards v. Smith, Admr., 63 Mo. 126; Smith v. Van Wyck, 40 Mo. App. 526; Garst v. Good, 50 Mo. App. 151.

*T. J. Rowe* and *Henry Rowe* for respondent.

It has been laid down in many cases as a general rule that extrinsic evidence is not admissible to remove a patent ambiguity, and that the instrument is inoperative and void. This rule, however, should be stated with qualification. The true doctrine seems to be, that

while direct evidence of intention is not admissible in explanation of ambiguous terms in a writing, yet proof of collateral facts and surrounding circumstances existing when instrument was made, may be properly admitted in order that the court may be placed as nearly as possible in the situation of the testator or the contracting parties, as the case may be, with a view the better to adjudge in what sense the language of the instrument was intended to be used and to apply it to the subject-matter. Davis v. Davis, 8 Mo. 56; Bell v. Dawson, 32 Mo. 79; Campbell v. Johnson, 44 Mo. 247; Carter v. Holman, 60 Mo. 498. Evidence of acts under the instrument is admissible as showing the practical construction which the parties themselves placed upon the instrument. Gas Light Co. v. St. Louis, 46 Mo. 121; Ellis v. Harrison, 104 Mo. 270; Topliff v. Topliff, 122 U. S. 131.

NORTONI, J.—This is a suit on a promissory note. The trial was had before the court without a jury. After taking the case under advisement, judgment was given for defendant, and the plaintiff appeals. The plaintiff filed the instrument sued upon as a demand against the estate of J. D. Lucas, deceased, in the probate court of St. Louis county. It was allowed and the estate appealed to the circuit court. Afterwards a change of venue was awarded to the circuit court of St. Charles county from whence comes the present appeal.

The instrument sued upon is as follows:

"Bridgeton, Mo., Nov. 28, 1902.

Good for $1000, one thousand dollars, for ten shares Kinloch Jockey Club stock surrendered to the undersigned, J. D. Lucas, by the owner of said stock, J. Kessler and for which I am liable.

JOSEPH D. LUCAS."

It is to be noted that the instrument bears date prior to the enactment of our negotiable instrument

law of 1905 and the case is to be treated wholly irre-spective of the provisions of that act.

We are unable to say upon what theory the court gave judgment for the defendant. No declarations of law were given and we are therefore unaided by any-thing in the record indicating the views of the court as to the law of the case. It is true the court refused one request by the plaintiff, but as this declaration failed to hypothesize all of the relevant facts in proof, it is of course presumed to have been refused for that reason. Although it is not clear on what theory the court gave judgment for the defendant, its judgment is sought to be sustained here on the proposition that the instru-ment sued upon is not a promissory note. If such is the theory of the judgment, then we believe it to be erroneous. On the other hand, if the judgment of the court was given for defendant on the theory that there was a failure of consideration for the note, then we be-lieve it may be sustained. The argument advanced by the defendant is to the effect that the instrument in suit is not a note but is rather merely a receipt which the deceased executed to the plaintiff for ten shares of stock in the Kinloch Jockey Club. It is said the instrument is ambiguous in its terms and therefore it is proper to re-ceive parol testimony showing the situation of the parties and the circumstances surrounding them, to the end of elucidating the intention in that behalf. Gen-erally speaking, if the intention of the parties sought to be set forth in a written contract is not clear be-cause of ambiguous language used therein, the am-biguity may be removed and the intention of the parties clarified by parol testimony to the extent mentioned. In other words, while direct evidence as to the intention is incompetent, it is always competent to receive parol testimony to the end of showing the situation of the parties, the surrounding circumstances and the relation which the words of the writing may bear to facts which constitute the subject-matter of the contract. [Ellison

v. Harrison, 104 Mo. 270, 16 S. W. 198; Davis v. Davis, 8 Mo. 56; Bell v. Dawson, 32 Mo. 79; Campbell v. Johnson, 44 Mo. 247; Carter v. Holman, 60 Mo. 498; Laclede Construction Co. v. Moss Tie Co., 185 Mo. 25, 84 S. W. 76; Greenleaf on Evidence, sec. 288.]

Be this as it may, except in cases where from fraud, mistake or illegality the instrument has not acquired original force as a contract, parol evidence is inadmissible to vary, contradict, add to or subtract from the terms of a written instrument. The rule proceeds upon the presumption that the parties have placed their entire engagement in writing, therefore, if the instrument imports a legal obligation with certainty, it alone shall be permitted to give evidence as to the terms of the agreement. [Tracy v. Union Iron Works Co., 104 Mo. 193, 16 S. W. 203; Laclede Construction Co. v. Moss Tie Co., 185 Mo. 25, 84 S. W. 76; Greenleaf on Evidence, sec. 275.] Under this rule, it is clear that if the instrument sued upon is a promissory note, then parol testimony is incompetent to destroy its obligation as such and show it to be a receipt instead. As to the general proposition that a promissory note may not be shown by parol to have been intended as a mere receipt, see the following authorities in point: Billings v. Billings, 10 Cush. Mass. 178; Dickson v. Harris, 60 Ia. 727; Daniels on Negotiable Instruments (5 Ed.), sec. 80. But it is said the instrument is not a promissory note for the reason it contained no promise to pay. It is sufficient if such a promise is either expressed in words or is raised by the law as a necessary implication on an acknowledgment of indebtedness therein contained. [Daniels on Negotiable Instruments, sec. 37.] There are numerous cases in the books of this State and elsewhere to the effect that mere due bills are promissory notes within the meaning of the law even though no promise to pay the indebtedness acknowledged to be due is expressed in words therein. See the following: McGowen v. West, 7 Mo. 569; Finney v. Shirley, 7 Mo. 42; Brady

v. Chandler, 31 Mo. 28; Jacquin v. Warren, 40 Ill. 459; Locher v. Kuechenmiester, 120 Mo. App. 701, 98 S. W. 92. And so a paper reciting "received of H. Doane for Samuel A. Reyburn, $180, Potosi, November 16, 1850," signed by J. H. Casey, was declared to be a note upon which Reyburn, the third party, in whose favor the money was received by Casey, could maintain an action; the principle asserted being that the acknowledgment of having received the money payable to Reyburn raised a promise by implication of law to pay the same to the party named. [Reyburn v. Casey, 29 Mo. 129.]

In Franklin v. March, 6 N. H. 364, the instrument sued upon and held to be a note was as follows: "October 19, 1830. Good to Robert Cochran, or order, for $30 borrowed money. Joseph W. March," it appearing that it was founded upon a sufficient consideration, borrowed money, the words, "Good to Robert Cochran" were therefore said to clearly signify an acknowledgment of indebtedness in the amount mentioned and the instrument declared a promissory note by an application of the principle that the law implies a promise to pay the indebtedness thus acknowledged.

In Hussey v. Winslow, 59 Me. 170, the instrument sued upon was as follows: "Nobleboro, October 4, 1869. Nathaniel O. Winslow, Cr. By labor 16 3-4 days at $4.00 per day, $67. Good to bearer, Wm. Vannah." The instrument was held to be a promissory note. It appearing the consideration was for 16 3-4 days' labor at $4. per day amounting in all to $67, the court declared the words, "Good to bearer" in this connection clearly indicated an acknowledgment of indebtedness in the amount mentioned and that inasmuch as the indebtedness was acknowledged, the law raised or implied the promise to pay the same.

It cannot be denied that on principle the law enters as a silent factor into every contract and the parties essentially assume and enter into mutual obligations with this in mind. Indeed, what is implied in an express

contract is as much a part of it as what is expressed. In other words, the legal import of every written undertaking is a part of the contract. [Long v. Straus, — Ind. —, 4 West. Rep. 235; Rodney v. Wilson, 67 Mo. 123, 124; Bishop on Contracts, sec. 121.]

The instrument in suit reads: "Bridgeton, Mo., Nov. 28, 1902. Good for $1000, one thousand dollars, for ten shares Kinloch Jockey Club stock surrendered to the undersigned, J. D. Lucas, by the owner of said stock, J. Kessler, and for which I am liable. Joseph D. Lucas." It will be observed that it expresses the consideration for which it was given, that is, ten shares of Kinloch Jockey Club stock, surrendered to the maker of the obligation. It is true neither of the words, "sold," "purchased" nor "assigned" is employed. However, such is not essential to a note. Be this as it may, the word, "surrendered" in a sense involves the idea of transfer of title. The Supreme Court of the United States said in the case of Evans v. United States, 153 U. S. 584, 591, "Indeed, the word 'surrendered' carries with it something more than bare delivery, and indicates a transfer of title as well as of possession." Bouvier's Law Dictionary, in treating of the word "surrendered" as applicable to estates in real property, among other things, says a surrender immediately divests the estate of the surrenderor and vests it in the surrenderee. Anderson's Law Dictionary, among other things, says the word "surrender" means to give up or make over. The Standard Dictionary defines the word "surrender" to mean to relinquish, as to surrender a right or privilege and gives as one of it synonyms of the word, "alienate," which word it says means to make over to another as the title or right. It appearing on the face of the instrument that the thousand dollars mentioned therein is for ten shares of stock in the Kinloch Jockey Club, surrendered by J. Kessler, the owner, to J. D. Lucas, the maker of the obligation, the result is, if we give the word "surrendered" the full meaning it imports, that according to

the face of the instrument, Mr. Kessler had transferred both the possession and title of such stock to Mr. Lucas. The paper writing vouchsafes that it is good for one thousand dollars for such expressed consideration. In these circumstances, the words, "good for $1000" essentially signify an acknowledgment of indebtedness to that extent. If an indebtedness be thus acknowledged, the law, which operates as a silent factor in the contract, raises from and implies an obligation incurred in the indebtedness a promise to pay the same. Besides Daniels on Negotiable Instruments (5 Ed.), sec. 36a and 37, see authorities supra.

The essential elements of a promissory note are: First, that it must be in writing; second, it must contain, either expressed or implied, a promise to pay; third, the promise must be for the payment of a sum certain of money absolutely and at all events; fourth, the promise must be unencumbered with collateral agreements to do something else; and fifth, the instrument must indicate with certainty the parties to the contract. And under the old law, it was essential that it be not sealed. [4 Am. and Eng. Ency. Law, (2 Ed.), 81.] The instrument before us presents each and all of the elements mentioned. As to the identity of the payee, it is sufficient if the note discloses from whom the consideration was received. In such circumstances, the promise is interpreted to be a promise to pay him from whom the consideration moved. [Story on Bails and Notes, sec. 36; Green v. Davis, 4 B. & C. 235; Hussey v. Winslow, 59 Me. 170, 172.] It appearing that the consideration recited in the note moved from J. Kessler, the owner, of the stock, for which the indebtedness is acknowledged, the law implies and interprets the promise to him.

Although the concluding words of the instrument "and for which I am liable" are of doubtful import and seem in a measure to relate back and refer to the stock as though Mr. Lucas acknowledged himself to be liable

for such stock, they seem as well to relate to the obligation to pay one thousand dollars as therein indicated. It is true these words may be treated as surplusage if they relate to the obligation to pay one thousand dollars, for enough appears without them to affix the obligation. However, the obligation and promise of the note are so clearly fixed on a consideration stated that we are unable to declare it not to be a note on account of the words referred to. If the parties intended the paper as a receipt or as evidence of an obligation to return the stock instead of one to pay the money, how easy it would have been to have written, "Good for ten shares of stock in the Kinloch Jockey Club of the par value of one thousand dollars, surrendered to the undersigned, J. D. Lucas, by the owner of said stock, J. Kessler, and for which I am liable." It is to be noted that the obligation contracted, instead of being for ten shares of stock, is "good for $1000," and the concluding words "and for which I am liable" are entirely consistent with the acknowledgment of indebtedness and implied promise to pay in the note.

Of course, the instrument is not a negotiable note, for the reason it contains no words of negotiability. [R. S. 1899, sec. 457; Bailey v. Smock, 61 Mo. 213; Taylor v. Newman, 77 Mo. 257; International Bank v. German Bank, 3 Mo. App. 362, 365.] However this may be in the judgment of the law, it is a promissory note and as such is entitled to the prerogatives and attributes incident to such obligations.

Besides the force of the general rule above referred to which precludes the reception of parol testimony to vary, contradict, add to, or subtract from, the terms of a written instrument generally, the principle is especially pertinent to promissory notes for the reason the law merchant affords a sort of special sanctity to these instruments. Therefore, except in cases of fraud or mistake or illegality, or total or partial failure of consideration, parol evidence of a verbal agreement made

at the time of, or prior to, the execution of the note, is not to be received to qualify, contradict, vary, subtract from or add to the terms of a note which is absolute on its face. The authorities are numerous. [Jones v. Jeffries, 17 Mo. 577; Smith v. Thomas, 29 Mo. 307; Jones v. Shaw, 67 Mo. 667; Rodney v. Wilson, 67 Mo. 123; Gardner v. Mathews, 81 Mo. 627; Sigler v. Booze, 65 Mo. App. 555; Holmes v. Farris, 97 Mo. App. 305, 71 S. W. 116; Trustees of Christian University v. Hoffman, 95 Mo. App. 488, 69 S. W. 474; Massmann v. Holscher, 49 Mo. 87; 4 Am. and Eng. Ency. Law, (2 Ed.), sec. 146, 147, 148, 149, 150, 151, 152, 153, 154; Daniels on Negotiable Instruments, (5 Ed.), sec. 80, 81.]

In affirmance of this doctrine, the right to contradict or vary the terms of a note has been denied under varying circumstances in many cases. Thus, where a note is payable on demand, it cannot be shown by verbal testimony that it was agreed it should not be paid until after the decease of the testator. [Woodbridge v. Spooner, 3 B. & Ald. 233; Graves v. Clark, 6 Blackf. 183.] Nor until after the sale of the maker's estate. [Getto v. Binkert, 55 Ks. 617, 40 Pac. 925; Free v. Hawkins, 8 Taunt, 92; 1 J. B. Moore, 535.] The rule forbids, too, the showing that a note in which no time for payment is expressed and is therefore constructively payable on demand, was to be paid at a specified time. [Thompson v. Ketcham, 8 Johns, 189.] Nor will the maker be permitted to show by parol that the note was given as an indemnity against certain claims. [Ridout v. Bristow, 1 Cromp. & J. 231.] It likewise precludes a showing by parol that the amount promised was to be paid only on condition that an endowment fund of $50,000 was raised before a certain date. [Trustees of Christian University v. Hoffman, 95 Mo. App. 488, 69 S. W. 474.] And as before stated, parol evidence is not admissible to contradict or vary the terms of the note by showing that the parties intended a receipt instead. [Billings v. Billings, 10 Cush. (Mass.),

178; Dickson v. Harris, 60 Ia. 727.] Nor that the note was given merely as a matter of form unless it be under the rule as for failure of consideration. Indeed, the rule forbids the reception of parol testimony to remove a patent ambiguity on the face of the note when to do so involves either adding to or subtracting from the language therein employed, other than that pertaining to the consideration. [Griffith v. Furry, 30 Ill. 251, 83 Am. Dec. 186; Brown v. Bebee, 1 D. Chipman, 227, 6 Am. Dec. 728; 4 Am. and Eng. Ency. Law (2 Ed.), 154; Wright v. Remington, 12 Vrooman (N. J.) 48; Daniels on Negotiable Instruments (5 Ed.), secs. 80, 81 and 81a.] From the instances cited, it is obvious the principle applies to every element of the instrument essential to the obligation vouchsafed therein, except the consideration. [Daniels on Negotiable Instruments, sec. 81.] It therefore appears that in so far as the testimony introduced sought to convert the instrument into a receipt for the stock instead of a promissory note, it was incompetent for the reason the law will not permit that which it declares to purport the obligation of a promissory note to be converted into an instrument of another character by means of parol testimony which is always regarded uncertain.

However, the rule of law above stated does not obtain with respect to such recitals in the note as pertain to the consideration on which it is founded. In other words, the matter of consideration is always open between the immediate parties to the instrument, as here, to contradiction. The want or illegality of consideration may be proved by parol to show that the agreement is not binding and valid in law to the full extent indicated therein. [Greenleaf on Evidence, secs. 284, 304; 4 Am. and Eng. Ency. Law (2 Ed.), secs. 196, 199, 200; Hacker v. Brown, 81 Mo. 68; Daniels on Negotiable Instruments, (5 Ed.), sec. 81a.] Our statute, section 645 Revised Statutes 1899, pointedly provides that whenever a written contract is the foundation of an

action the proper party may prove the want or failure of the consideration thereof in whole or in part. That it is competent to prove by parol there is a want or failure in whole or in part of the consideration for which a promissory note is given has often been affirmed under this statute. See the following cases in point: Murphy v. Gay, 37 Mo. 535; Barr v. Baker, 9 Mo. 840; Williams v. Mellon, 56 Mo. 262; Brockhaus v. Schilling, 52 Mo. App. 73; Danforth v. Crookshanks, 68 Mo. App. 311; Holmes v. Farris, 97 Mo. App. 305, 71 S. W. 116. As the consideration for which the note is given is always open to investigation or contradiction, the rule admitting parol testimony to that end permits a review and examination of the transaction which occasioned the note to be given in the first instance. In other words to the end of showing a partial or total failure of consideration for the note, it is competent to receive parol testimony as to the precise character of the antecedent transaction which resulted in the execution of the note. The rule has been applied in this State by our Supreme Court in a recent case between the original parties wherein the maker of the notes was permitted to show that they were accommodation instruments in the first instance and therefore wholly without consideration. See Chicago Title & Trust Co. v. Brady, 165 Mo. 197, 65 S. W. 303. This court also recognized and applied the rule in Holmes v Farris, 97 Mo. App. 305, 71 S. W. 116. See also the following authorities in point: Leighton v. Bowen, 75 Mo. 504; Shoe & Leather Bank v. Wood, 142 Mass. 563; Gale v. Harp, 64 Ark. 462, 43 S. W. 144; Juillard v. Chaffee, 92 N. Y. 529.

Although the evidence in the record was introduced for the purpose of showing the note was a receipt instead, it tends, with great force, to prove that the deceased maker, Mr. Lucas, actually received no consideration whatever therefor. As stated, we are unable to discern the precise ground upon which the judgment was given for defendant, but, in the absence of erroneous dec-

larations, if it may be sustained on any theory of law within the pleadings, it should be affirmed. In such circumstances, all presumptions go in favor of the judgment of the trial court. The case having originated in the probate court, no formal pleadings are required. [Sec. 200, R. S. 1899.] The same is true on appeal to the circuit court, for that court proceeds to try and determine the cause anew on the pleadings as before. [R. S. 1899, sec. 285; Cole Co. v. Dallmeyer, 101 Mo. 57, 13 S. W. 687; Wencker v. Thompson, 96 Mo. App. 59, 69 S. W. 743.] It therefore appears that the defense of failure of consideration was open to the defendant and that it was competent for the trial court to treat with the evidence before it on that score. The evidence introduced tended to prove that the Kinloch Jockey Club was a corporation of which the deceased maker of the note, Joseph D. Lucas, was president and payee, Julius Kessler, was a stockholder; that although it owned some assets, it was insolvent at the time the note was given and its stock was of slight value. It appears Mr. Lucas and one Chew held a deed of trust on its property for the sum of $23,500; that this deed of trust had matured and was about to be foreclosed. It appears, too, the parties were considering the matter of having a trustee buy in the property at the mortgage sale and use it in connection with a new Jockey Club to be thereafter formed and incorporated. All of the parties were to accept stock in the new concern for that surrendered in the old and in certain pro rata proportion thereto. It seems that Mr. Lucas, the president of the insolvent corporation, was accumulating the stock with this end in view, for it is in testimony that he delivered practically all of the stock to Mr. Chew, who in turn delivered it to Edward Murphy, as trustee for all of the parties under a contract signed about five weeks after the note was given. The plaintiff, Kessler, owned stock of the par value of one thousand dollars in the insolvent corporation, represented by two certificates, numbered 30 and

31. These he assigned in blank and delivered to Mr. Lucas, the maker of the note at the time the note was executed. Along with other certificates of stock accumulated by Mr. Lucas, he handed these to Mr. Chew, the secretary of the association, to be deposited with Mr. Murphy, the trustee for all of the parties. It appears that on January 2, 1903, or within five weeks after the note was given, all of the parties owning stock in the Kinloch Jockey Club signed an article of agreement by which Edward Murphy was appointed trustee to hold the stock owned by each of them and to act for the parties thereto in buying in the property of the insolvent corporation at the contemplated sale under the deed of trust held by Lucas and Chew for $23,500. The plaintiff signed this document as the owner of the ten shares of stock above referred to. He concedes that he signed the same and that he therein represented himself as the owner of the identical stock which he claims to have sold five weeks before to Mr. Lucas, but he says that he signed it at the instance of Mr. Lucas to aid him in concealing from the other stockholders that he, Lucas, had purchased the ten shares of stock mentioned. Of course, the question of the witness' veracity in respect of this and other matters was one for the trial court. The purport of the entire proof is that Mr. Lucas accumulated this and other stock for the purpose of depositing it with the trustee who was acting for all of the parties and that the equitable title of this stock at least remained in Mr. Kessler. Besides the other proof referred to, the circumstance that the plaintiff signed the document of January 2, 1903, representing himself as still the owner of the stock theretofore delivered to Mr. Lucas and in turn delivered to Chew and Murphy, trustees, points with convincing force to the conclusion that although Lucas executed the note he in fact received no consideration therefor from the plaintiff.

In answer to the suggestion that in the former part of the opinion we have treated the word "surrendered"

employed in the note as involving the idea of a passing of title in the stock to Mr. Lucas as consideration for the note and that it is now said the evidence tends to prove that no such title passed, it may be said that the court is not precluded by such recitals of the note as pertain to the consideration. The reasoning with respect to the word "surrendered" in the prior portion of the opinion goes only to the effect of demonstrating that such was a valid and sufficient consideration, if true, to support the promise implied in the note, whereas the question now under consideration relates instead to the want of consideration. In other words, the recital of the consideration in the note including the word "surrendered" is sufficient for the prima facie purposes of the note, whether true or untrue in point of fact, but wholly insufficient to support the obligation if it appears as a fact that the title to the stock was never transferred to the maker of the note. No one can doubt that although every other element of the note is protected by the rule forbidding the reception of parol testimony, the recitals therein pertaining to the consideration may be contradicted and overthrown upon a showing of fact to the contrary.

We believe there is substantial evidence in the record tending to support the judgment on the theory that there was no consideration given for the note, for it sufficiently appears that the title in the shares of stock remained in the plaintiff.

The judgment should be affirmed. It is so ordered. All concur.