JOSEPH H. RAESIDE *et al.*, Appellants, v. H. A. HAMM, Appellees.

Sale: BREACH OF WARRANTY: DAMAGES. Where in an action to recover the purchase price of a stallion, sold under a written warranty that the horse was "an average foal getter," it appeared that at the time of the sale the vendor knew that the horse was affected with a disease which rendered him unfit for the service for which he was purchased and warranted, and from which he soon afterwards died, and such condition was not discoverable at the time of the purchase, *held*, that the notes given for the purchase price were without consideration, and that the vendee was entitled to recover for time and money expended under the direction of the vendor in his endeavors to save the horse from said disease.

*Appeal from Calhoun District Court.*—HON. GEORGE W. PAINE, Judge.

WEDNESDAY, MAY 10, 1893.

ACTION on a promissory note, and for the foreclosure of a mortgage. There was a judgment for the defendant, and the plaintiffs appeal.—*Affirmed.*

*Stevenson & Lavender,* for appellants.

*M. R. & J. B. McCrary,* for appellee.

GRANGER, J.—On the seventh day of October, 1889, the defendant made to the plaintiffs his three promissory notes for the aggregate sum of eight hundred dollars and secured the same by chattel mortgage. The notes mature at different times, and this action is on the first being for two hundred dollars, and interest. The consideration for these notes was a stallion named "Mark Master," and the defendant avers that in the sale of said horse he was represented to be sound and all right, and a good foal getter, and that the rep-

resentations were false and fraudulent; that when the stallion was sold to the defendant he was unsound and worthless, and thereafter, about January 30, 1890, said horse, because of his unsoundness, died. The defendant asks the cancellation of the notes and mortgage, and for damages for his services and expenses in caring for the horse because of his unsoundness. The district court granted the relief, and gave judgment for the defendant for one hundred and ten dollars and costs.

The plaintiffs reside in Waukegan, Illinois, and the business, on their behalf, in the sale of the horse, was done by one Scott. There was delivered to the defendant a written warranty that the "horse named 'Mark Master'" was "an average foal getter," if cared for properly, etc. It contained no other words of warranty as to soundness. The testimony shows quite conclusively that when the horse was sold he was affected with the disease from which he died. His disease was located in the "sheath," and rendered him entirely unable to perform, and unfit for, the service for which he was purchased and warranted. Because of this defect he was of no value, and this was the condition of the horse when sold. The horse was delivered the day after the notes were made, and had not been seen by the defendant before. About three days afterwards the defect, or disease, was discovered and the defendant then went to Scott and told him how the horse was and that he would not pay for him. Scott told him he thought it was only a bad cold, and he would be all right in a few weeks if properly cared for, and he afterwards gave a prescription for the horse.

There is no question as to the agency of Scott. He had the horse in possession, and delivered him to the defendant, signed the plaintiffs' names to the warranty, and received the notes on which they seek to recover.

These plaintiffs are not in a situation to successfully question the fact as to the agency. A point of contention is as to the allegations and proofs of representations of soundness, outside of the specific terms of the written warranty. It is not important that we should inquire as to that. If we disregard evidence as to such representations, and look alone to the warranty and Scott's knowledge of the condition of the horse, when sold, we have a clear showing of fraud. The warranty was, itself, no less than a representation that the horse was an average foal getter. If it was given with a knowledge that it was false, and it was relied upon, it was a fraud, and within the allegations of the answer. That Scott knew of the disease is clearly shown. He was treating the horse for the same ailment as early as September 12, 1889, when it is proven that the legs and sheath of the horse were swollen. The horse was not a foal getter, because of his diseased condition, and this was known to be so by Scott. The sale of him, with the representation that he was a foal getter, was a fraud, and there was no consideration for the notes given. It does not appear that when the defendant took the horse the defects were observable from an ordinary examination, probably because of treatment; but they soon after developed when the treatment ceased. This fact is not testified to in terms, but it is inferable from the proven facts. It is not a case in which the defendant was required to rely on his own senses as to the qualities of the horse. He had a right to rely upon the plaintiffs' representations as made. By the directions of Scott, whom alone the defendant knew in the conduct of the transaction, he expended time and money to save the horse. It was a direct result of the fraud, and for it he should recover. The judgment is in accord with our views, and it is AFFIRMED.