[No. 3850.]

SPRINGER ET AL. v. PUCKETT.

1. APPEALS—*Verdict or Finding Below,* is conclusive in the court of review, unless clearly against the evidence, or the result of passion or prejudice.

2. MEASURE OF DAMAGES—*Breach of Warranty of Personal Property.* In an action for the breach of a warranty of personal property, after payment of but part of the purchase price, plaintiff recovers the amount paid; and where return of the thing sold has been tendered to the seller, moneys reasonably expended in the care and keep of the property subsequent to said tender.

*Appeal from Denver District Court.* HON. GREELEY W. WHITFORD, Judge.

Mr. JOHN A. EWING, Mr. R. BURGE TONEY, Mr. CHAS. CLYDE BARKER, Mr. FRAZER ARNOLD, for appellants.

Mr. CHAS. A. JOHNSON, Messrs. STUART & MURRAY, for appellee.

HURLBUT, J., rendered the opinion of the court.

Action begun September 25, 1909, for breach of warranty growing out of the sale of a stallion. The complaint of appellee (plaintiff below) contains three causes of action: (1) The total failure of the animal to make good the warranties made by defendants at the time of sale; (2) for moneys laid out and expended in the care

and keep of the animal while endeavoring to secure foals from him; (3) for failure of the stallion to produce foals in a band of sixty mares, which is alleged to be the purpose for which he was purchased.

The case was tried to the court without a jury, and the court found for the plaintiff upon the first two causes of action, and against her on the third. The evidence is conflicting, but is amply sufficient to support the judgment.

It seems to be conceded without question that on or about February 25, 1908, plaintiff purchased from defendants the animal in question, under a warranty from defendants that he was a reasonably sure foal-getter, with healthy, sound mares, when well taken care of and properly handled. In fact it is improbable that plaintiff would have purchased him for the large sum of $4,000 except upon some guaranty of his ability and capacity to produce the results for which he was purchased. The controlling question here appears to be, whether the contract of purchase was verbal or written. The evidence was very conflicting upon this point. The trial judge found that the contract of purchase of the animal was verbal, and entirely completed and executed on the morning of February 25, 1908, and that at that time plaintiff's check for $500 and her notes and mortgage were all signed and delivered, and the animal delivered to her; and that the so-called bill of sale, which defendants claim was the contract, was not signed and delivered until the evening of that day, after the sale had been entirely consummated. Under the well-established rule, the determination of controverted facts by the jury or trial judge is binding upon our appellate courts unless it appears from the record that the verdict or finding was the result of passion or prejudice or was clearly against the evidence.—*Mackey v. Briggs,* 16 Colo., 143, 26 Pac., 131.

Plaintiff's evidence well tended to show that she was

the sole purchaser of the animal; that the contract was verbal, and fully consummated during the morning of the 25th of February; that at that time the notes and mortgage were executed and delivered, and the animal turned over to plaintiff; that on the same day, in the evening after dark, Blanchard (appellants' agent) appeared at plaintiff's house with some papers, one of which was the bill of sale mentioned, and that he requested both plaintiff and her husband to sign the same, stating that it was simply a receipt to show his principal what he had done with the horse; and that plaintiff signed the same without reading or hearing it read. While most of this evidence was controverted by defendants, and their testimony tended to show the contract of sale to be in writing, and embodied within the bill of sale, the court specifically found those issues in favor of plaintiff. The testimony was voluminous. The trial court heard the witnesses, had full opportunity to observe their deportment and manner while giving their testimony, and was in a position to best judge where the weight of evidence rested.

The evidence is conclusive that after two seasons' trial of the stallion he proved (with the possible exception of one colt) to be absolutely sterile; and the evidence was equally conclusive that the animal was utterly worthless for the purpose for which he was purchased; also that plaintiff's sole inducement for purchasing him for the large sum of $4,000 was defendants' warranty of his high pedigree and sure foal getting qualities.

The court found on the first cause of action for the plaintiff in the sum of $2,084, being the amount previously paid by plaintiff on the verbal contract; and $960 on the second cause of action for the care and keep of the animal until the beginning of the second season.

The point is strongly urged by appellants that the court did not adopt the proper measure of damage. It

is conceded by both parties that the stallion would have been worth $4,000 if he had been as warranted for breeding or other purposes.

There is some contrariety of opinion in the various jurisdictions of this country concerning the measure of damage in actions founded upon breach of warranty, but our own supreme court is the only guide we need consider. It might be well to here notice that both parties agree that this action is not one for a rescission of contract, nor an action based on fraud and deceit, nor one for breach of an executory contract, but is simply an action for breach of warranty.

In *Huston v. Plate,* 3 Colo., 402 (being an action for breach of warranty in the sale of a mare), the court, by Justice Thatcher, lays down the rule for measuring damages in such an action as follows:

"The measure of damages for the broken warranty is the same whether the action sounds in tort, or in contract. The ordinary rule is that the damages shall be measured by the difference between the actual value of the article at the time of the sale, if it had been as warranted, and its value with the defect."

The case of *Tilley et al. v. The Montelius Piano Co.,* 15 Colo. App., 204, 61 Pac., 483, was an action based upon breach of warranty, and is analogous to the instant case in that only part of the purchase price of the article had been paid by the purchaser, which is the case here. The court said:

"The action being upon breach of warranty, the defendant was liable only, if liable at all, for the difference between the purchase price of the instrument and its actual value in its defective condition, if the purchase price had been entirely paid; or, if not, if the payment exceeded the value of the instrument, the measure of damages would have been such excess only.—*Schumann v. Wager,* 36 Ore., 65 [58 Pac., 770]."

The Oregon case there cited discusses the measure of damage in an action for breach of warranty where part of the purchase price only has been paid, and uses this language:

"The general rule is  *  *  *  that, where the contract price under a warranty of quality has been fully paid, the measure of damages is the difference between the amount paid and the value of the article furnished. But the one applicable here, where only a partial payment had been made, is that, if the amount paid exceeds the value of the monument furnished, the defendant is entitled to recover the excess of payment, and this is the measure of her ultimate damages; but, if the monument was worthless for the purpose intended, then the measure of damages would be the whole amount paid, and, if the reasonable value of the monument was greater than the amount so paid, then the plaintiff was entitled to recover the excess of such value over and above the payment. In no event could the defendant recover the $85, unless the monument was utterly worthless." See *Barr v. Baker & Baker,* 9 Mo., 840.

Following the rule announced in the cases just cited, it is clear that the district court in the instant case did not err in rendering judgment upon the first cause of action in the sum of $2,084, as the record shows that only that amount had been paid on the purchase price of $4,000; and the evidence is ample to warrant the court's finding that the stallion was worthless. See also *Snyder et al. v. Baker et al.* (Tex. Civ. App.), 34 S. W., 981.

Appellants further contend that it was error in the trial court to allow plaintiff the sum of $960 under the second cause of action, for the care and keep of the animal up to the beginning of the second season, insisting, as we understand, that such damage could be allowable

only in case the stallion had been tendered back to defendants by plaintiff and defendants had refused to resume possession. If appellants are right in their contention as to the law on this point, then the record appears to bring this case clearly within the requirement. On June 20, 1908, being early in the breeding season of that year, plaintiff wrote a letter to defendants, therein complaining that she had been trying to breed with the stallion and had met with failure; that all his efforts up to that time indicated his total impotency; requesting them to come and see about the animal, saying that if they did not she would send him back to them; that she could not stand the expense of keeping him; that there was something wrong with him as to his breeding qualities; that if she did not hear from them she would put the horse on the train and send him back, etc. In answer to this letter defendants, on June 27, 1908, wrote a long letter to both plaintiff and her husband, in which they acknowledged receipt of her letter; expressed regret at her belief that the horse was a failure as a breeder; suggested that she was impatient and trying to determine the breeding qualities of the stallion too soon; stating that they had, on March 21st, sent her gratis an "impregnator;" insisted that it was entirely too early to determine whether or not the stallion was getting foals; and urged that she wait until the latter part of the season before arriving at a definite conclusion as to the breeding qualities of the stallion. The general tone of the letter was to urge plaintiff not to become impatient, but to continue further efforts to secure foals from the stallion, holding out hope that by keeping him and trying him he would certainly prove to be all right as a successful foal getter. On June 30th, July 15th, and July 30th, 1909, letters were written on behalf of plaintiff to defendants, again notifying them that plaintiff had utterly failed, after faithful effort, to secure any

foals from the stallion, and tendering him back to defendants, stating that she held him subject to their order, offering to take a good stallion in his place, etc. At no time, however, did defendants indicate their willingness to take him back.

Under these circumstances the trial court gave judgment for plaintiff in the sum of $960 for the keep of the animal through the first season only, refusing to allow on that account any sum for the second season. We find in *Huston v. Plato, supra,* this further language:

"In addition to this measure of relief the plaintiff in this case might also recover the expenses of keeping the mare, if the court was satisfied from the evidence that the plaintiff had tendered the mare back to the vendor after discovering her unsoundness and the vendor had declined to accept her. These expenses would extend from the date of the offer to re-deliver to the vendor, over such a reasonable period as might, in view of all the circumstances, be necessary to make a fair sale of the mare."

The following cases are in harmony with the rule just stated: *Raeside v. Hamm,* 87 Ia., 720, 54 N. W., 1079; *Love & Co. v. Ross et al.,* 89 Ia., 400, 56 N. W., 528; *Glidden v. Pooler,* 50 Ill. App., 36. Section 766, Sedgwick on Damages (8th ed.), reads, in part, as follows:

"Where an article is warranted fit for a particular purpose, the purchaser can recover the damages caused by an attempt to use it for that purpose. This sometimes gives a larger measure of recovery than would be allowed under the ordinary rule."

Under the record showing here, the trial court did not err in rendering judgment for the $960 for the care and keep of the animal during the first season.

Some other questions are urged and discussed by

appellants as warranting a reversal, but they do not appear to be controlling as against the conclusions we have reached.

We discover nothing in the record that would warrant us in reversing this judgment.

*Judgment Affirmed.*

King, J., not participating.