

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

May 10, 1961

Hon. Holloway J. Martin            Opinion No. WW-1049
County Attorney
Limestone County                   Re: Authority of Limestone
Groesbeck, Texas                        County to enter into the
                                        submitted proposed con-
                                        tracts with certain soil
                                        conservation districts,
Dear Mr. Martin:                        et al.

        You have asked three questions pertaining to two
contracts which are being considered by Limestone County in
regard to a flood control program which is being developed.
The contracts provide that the County will work in conjunc-
tion with the U. S. Soil Conservation Service and the Soil
Conservation District.

        The first question you ask is whether the first
provision of one of the contracts purports to contract away
the County's discretionary power of eminent domain.

        The contract provision provides:

        "1.   The District and/or the County
        will acquire without cost to the Federal
        Government such land, easements, or rights-
        of-way as will be needed in connection with
        the Works of Improvement.   The County will
        not participate in the acquisition of land,
        easements or rights-of-way until the District
        has exhausted every reasonable possibility
        of such acquisition."

        Articles 7048b, 1581e and 1109k, Vernon's Civil
Statutes, confer contractual powers on the counties to enter
into contracts with regard to flood control.   Section 1,
Article 1109k, provides that:

        "All counties, cities, water control
        and improvement districts, drainage dis-
        tricts and other political subdivisions in
        the State of Texas are authorized to enter
        into contracts with soil conservation dis-
        tricts for the joint acquisition of right-

of-ways or joint construction or maintenance
of dams, flood detention structures, canals,
drains, levees and other improvements for
flood control and drainage as related to
flood control, and for making the necessary
outlets and maintaining them; and providing
further that such contracts and agreements
shall contain such terms, provisions and
details as the governing bodies of the re-
spective political subdivisions determine
to be necessary under all facts and circum-
stances."

Article 1581e, Vernon's Civil Statutes, declares that
the counties shall have the right of eminent domain to condemn
and acquire real property and easements and right-of-ways for
flood control purposes.

If and when it becomes necessary to exercise the
powers of eminent domain, the County may, of course, do so;
clearly the county has that authority.  Since the County has
the power to so act, we fail to see why the County cannot agree
that it will act.  The power of eminent domain will be exer-
cised by the County itself, if and when the need arises.

The second question pertains to a fourth provision
of one of the contracts.  The provision provides that:  the
County will "Budget annually sufficient funds to carry out
the maintenance of these structures."  The structures referred
to are those which have been and will be constructed under the
flood control project.  The amounts which will be required are
unascertainable at this time.

Article 1109k provides in part that:

"Sec. 3.  All counties in the State of
Texas are authorized to expend Permanent
Improvement Funds for carrying out the pur-
poses of this Act. . ."

In regard to the use of the permanent improvement fund,
you have asked whether the above quoted provision of the con-
tract creates a "debt" within the meaning of Section 7 of
Article XI of the Texas Constitution.

Section 7, Artixle XI of the Texas Constitution pro-
vides:

". . . But no debt for any purpose
shall ever be incurred in any manner by
any city or county unless provision is
made, at the time of creating the same,
for levying and collecting a sufficient
tax to pay the interest thereon and pro-
vide at least two per cent (2%) as a
sinking fund; . . ."

In McNeill v. City of Waco, 89 Tex. 83, 33 S.W. 322
(1895) "debt" is defined to mean ". . . any pecuniary obliga-
tion imposed by contract, except such as were, at the date of
the contract, within the lawful and reasonable contemplation
of the parties, to be satisfied out of the current revenues
for the year, or out of some fund then within the immediate
control of the corporation. . . ."

Such a provision creates a debt within the meaning
of the Constitution.  T. & N.O.R.R. Co. v. Galveston County,
141 Tex. 34, 169 S.W.2d 713 (1943).

By your third question, you ask whether funds
appropriated to the Farm-to-Market and Lateral Road Fund may
be used for flood control purposes.  You state that the only
issue voted upon and passed by the voters was:

"Whether said County shall levy,
assess and collect and ad valorem tax
of not to exceed thirty cents on each
hundred dollars ($100.00) valuation of
all property within said Limestone
County, except the first $3000.00 value
of residential homestead, for the con-
struction and maintenance of Farm To
Market Roads only."

Section 3, Article 7048a, Vernon's Civil Statutes,
provides:

"Taxes levied and collected under
the provisions of this Act shall be
credited by the Commissioners Court to
separate funds known as the Farm-to-
Market and Lateral Road Fund, to be used
solely for Farm-to-Market and Lateral
Roads within such county, and to the
Flood Control Fund, to be used solely
for Flood Control purposes within such
county, said credits to be made propor-
tionately in accordance with the

allocation adopted at the election called under the provisions of Sections 7 and 8 of this Act."

It is clear that the funds in question may not be used for flood control purposes.

## S U M M A R Y

The County may contract to acquire right-of-ways needed under a flood control project. With regard to the Permanent Improvement Fund, a provision in a contract which obligates the County to budget annually sums uncertain to maintain flood control structures creates a debt within the meaning of Section 7, Article XI of the Texas Constitution. Funds allocated to the Farm-to-Market and Lateral Road Fund may not be expended for flood control purposes.

Yours very truly,

WILL WILSON
Attorney General of Texas

By William H. Pool, Jr.
Assistant

WHPjr:ljb

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Sam Wilson
Elmer McVey
Maston Courtney
Iola Wilcox

REVIEWED FOR THE ATTORNEY GENERAL
BY: Morgan Nesbitt