**ALL PERSONS INTERESTED IN OR AF-
FECTED BY the ISSUANCE OF the SE-
CURITIES, ETC., Appellants,**

v.

**JEFFERSON COUNTY, Texas, Appellee.**

No. 6825.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 9, 1965.

Rehearing Denied Dec. 29, 1965.

Baker, Botts, Shepherd & Coates, Houston, George W. Brown, Jr., Beaumont, for appellants.

Keith, Mehaffy & Weber, W. C. Lindsey, Dist. Atty., James M. Farris, Asst. Dist. Atty., Beaumont, Roy B. Johnson, Asst. Atty. Gen., Austin, for appellee.

PARKER, Justice.

This is an appeal from the following judgment:

"NO. B–84,584
NO. B–84,791

No. B–84,584
George W. Brown, Jr.

vs.

Jefferson County, Texas,
et al

As Consolidated with

No. B–84,791
Jefferson County, Texas

vs.

All Persons Interested in or
Affected by the Issuance of
the Securities, Etc.

In the District Court of
Jefferson County, Texas
60th Judicial District

## FINAL JUDGMENT

BE IT REMEMBERED that upon the 7th day of September, 1965, came on to be considered the consolidated cause above captioned, pursuant to notice, and came the parties in person and by and through their respective attorneys of record; and, at the conclusion of said hearing, the Court here and now enters this final judgment, making

all necessary findings of fact and conclusions of law in support thereof, some of which are set out below:

I. *The Consolidated Cause*:

A. No. B–84,584, entitled 'George W. Brown, Jr. v. Jefferson County, Texas,' is a suit brought by the Plaintiff in the nature of a taxpayer's suit seeking a declaratory judgment, a temporary restraining order, temporary injunction, and a permanent injunction. The Plaintiff attacked two resolutions of Jefferson County, Texas, adopted by its Commissioners' Court on April 3, 1963 and July 16, 1965, respectively. He named not only Jefferson County, but the officials thereof as parties defendant.

B. No. B–84,791, entitled 'Jefferson County, Texas v. All Persons Interested in or Affected by the Issuance of the Securities Described in Plaintiff's Original Petition' is a suit brought by the Plaintiff under the provisions of *Article 717m*, RS to validate a certain bond issue more particularly described in Plaintiff's Petition, but designated as 'Jefferson County Bridge Bonds, Series 1965.'

II. Prior Orders:

A. In *Cause No. B–84,584*, entitled as above, the Court has entered three prior orders, each of which is incorporated herein by reference, namely:

1. Order dated April 12, 1965, denominated 'Agreed Order Maintaining Status Quo';

2. Order dated April 29, 1965, but actually, entered on May 4, 1965, entitled 'Order Denying Temporary Injunction';

3. Order dated May 24, 1965, consolidating said cause with No. B–84,791.

B. *Cause No. B–84,791*, entitled as above, the Court has entered two prior orders:

1. Order dated May 17, 1965, setting a hearing upon said proceeding so filed by Jefferson County, providing for its publication, and fixing the date of hearing of the proceedings.

2. Interlocutory order bearing date of July 19, 1965.

III. It appearing to the Court, and the Court here and finds that in *Cause No. B–84,791*, as aforesaid, that notice has been given, issued, published, and served in the time and manner required by law to give this Court jurisdiction hereof and to require the appearance of all parties hereto and interested herein or affected hereby, and the Plaintiff in Cause No. B–84,584, George W. Brown, Jr., and the Attorney General of Texas, were the only persons except the Plaintiff who appeared at the time and place noted for such hearing, and that the Court has jurisdiction of the subject-matter and of the parties in said validation proceeding brought under Cause No. B–84,791, and that the interlocutory judgment heretofore entered in said cause should be in all things ratified, confirmed, and merged into this judgment, the Court here and now enters this final judgment in said Cause No. B–84,791, styled 'Jefferson County, Texas v. All Persons, etc.' as follows:

Upon July 19, 1965, came on for consideration the above entitled and numbered cause No. B–84,791, wherein JEFFERSON COUNTY, TEXAS is Plaintiff, and ALL PERSONS INTERESTED IN OR AFFECTED BY THE ISSUANCE OF THE SECURITIES DESCRIBED IN PLAINTIFF'S ORIGINAL PETITION, are Defendants; and, the Attorney General of the State of Texas, the Honorable Waggoner Carr, appearing by and through an Assistant Attorney General came on behalf of the State of Texas; and, the Court here and now finds that notice has been given, issued, published, and served in the time and manner required by law to give this Court jurisdiction hereof and to require the appearance of all parties hereto and interested herein or affected hereby at this time; and, it appearing to the Court that only George W. Brown, Jr., [the individual plaintiff in Cause No. B–84,584, previously con-

solidated with this Cause No. B–84,791], the Plaintiff, Jefferson County Texas, and the Attorney General of Texas appeared, and no other parties answered, announced, intervened, or appeared; and, the Court, after considering said proceeding, being brought under the provisions of Article 717m, Vernon's Annotated Civil Statutes, as amended and the Court upon due hearing and after considering the pleadings, receiving the evidence, and the argument of counsel, and being fully advised in the premises is of the opinion and finds that the allegations in the Plaintiff's Original Petition in said in rem proceeding filed by Jefferson County, Texas [which is incorporated herein by reference as fully as if set out herein in haec verba] are true and correct, that the law and the facts are with the said Plaintiff, and that said Plaintiff is entitled to all the orders and judgment prayed for by said Plaintiff in its Original Petition, the Court having found the facts to be as stated in said Plaintiff's Original Petition, now makes the following Conclusions of Law:

(1) Plaintiff, JEFFERSON COUNTY, TEXAS, is fully authorized by law to issue, sell and deliver said bonds and the proceedings authorizing their issuance are valid and in full conformity with the requirements of the statutes and applicable laws of the State of Texas;

(2) Said bonds, when registered by the Comptroller of Public Accounts of the State of Texas, and sold for not less than par and accrued interest, will be valid and binding obligations of Jefferson County, Texas, according to their face, tenor, effect, and terms.

(3) After the sale of said bonds and the receipt of the proceeds thereof, the expenditure of said proceeds for the erection and construction of a bridge lying wholly within Jefferson County, Texas, will constitute a legal expenditure thereof; it is therefore,

ORDERED, ADJUDGED, and DECREED by the Court:

*First*:

The Commissioners' Court of Jefferson County, Texas, has the authority to issue the 'Jefferson County Bridge Bonds, Series 1965' [more fully described in Plaintiff's Original Petition which is here referred to for a more perfect description thereof] in the principal amount of ONE MILLION FIVE HUNDRED THOUSAND ($1,500,-000.00) DOLLARS, upon the terms, conditions, covenants, and agreements set forth in the bond resolution authorizing said bonds, which bond resolution, including a complete description of said bonds, is on file in this cause as an exhibit attached to Plaintiff's Original Petition.

*Second*:

That said bonds in all proceedings taken or to be taken in connection therewith, including the levy of the tax, are valid and in all things have been authorized in accordance with law.

*Fourth*:

That said Bonds, when registered by the Comptroller of Public Accounts of the State of Texas, and sold for not less than par and accrued interest, will be valid, binding, and enforceable in accordance with their terms.

*Fifth*:

That the Jefferson County Bridge Bonds, Series 1965, more specifically described in Plaintiff's Original Petition, be and they are hereby in all things validated and approved.

This Judgment, Order and Decree shall be forever binding and conclusive against all persons or entities interested in or affected by, the issuance of the aforesaid bonds, whether mentioned in and served with notice of these proceedings, or included in the description 'all property owners, taxpayers, citizens and others having or claiming any rights, title or interest in any property or funds to be affected by the issuance of the securities or affected in any way thereby,' and this Judgment shall constitute a permanent injunction against the institution by any person or entity (including George W. Brown, Jr.) of any action or

proceeding contesting the validity of the aforesaid bonds, or the validity of any provision made for the security thereof or payment of same, the interest thereon, or the purpose and project for which the proceeds thereof are to be expended.

The prior interlocutory order heretofore noted, is here and now, to the extent herein recited, adopted by the Court in said *Cause No. B–84,791,* upon this the 7th day of September, 1965; and the Court, further orders that all costs of this proceeding to validate said bonds shall be taxed against Jefferson County, Texas, and the Clerk of this Court is directed to certify the said costs to the Commissioners' Court of Jefferson County, Texas, for payment, but no execution shall ever issue thereon.

THEREUPON, and upon the 7th day of September, 1965, at the time and place previously noted, there came on for consideration all matters remaining at issue in the consolidated cause, and came the parties in person and by and through their respective attorneys of record and all parties announced ready for trial; and, the Defendants having presented to the Court their. Special Exception in the nature of a plea to the jurisdiction of the Court as contained in Paragraph 2 of their pleadings filed herein on August 23, 1965, and the Court, after considering said plea, the argument of counsel, and being fully advised in the premises, and being of the opinion that said plea to the jurisdiction was in all respects good and should be in all things sustained; the Court did, upon the 7th day of September 1965, sustain said plea to the jurisdiction; but the said George W. Brown, Jr., having sought leave to amend, such leave was granted.

And, thereafter, the said George W. Brown, Jr., having filed his amended pleadings pursuant to leave heretofore granted, and the Defendants having filed their Second Amended Original Answer in reply thereto, the matter care on for hearing upon the 9th day of September, 1965, pursuant to notice to all parties, and came the parties

and their counsel of record; and, the Defendant having presented their exceptions in the nature of a plea to the jurisdiction as now contained in Paragraph One of said Second Amended Original Answer, and the Court, after considering said pleadings, the argument of counsel, and being fully advised in the premises, and still being of the opinion that the exception in the nature of a plea to the jurisdiction should be in all things sustained; and, it further appearing to the Court that said Original Plaintiff, George W. Brown, Jr., declined to further amend to meet said plea of the Defendants to the jurisdiction of this Court, this cause of action asserted by the said George W. Brown, Jr., considered independently and also as an answer in the validating action, should be and is hereby in all things, dismissed; it is further,

ORDERED, ADJUDGED, and DECREED by the Court that the suit of GEORGE W. BROWN, JR., against JEFFERSON COUNTY, TEXAS, and the individuals named as Defendants in said cause No. B–84,584, be and the same is hereby dismissed, and said Defendants, and each of them shall go hence without day and recover their costs. All costs incurred by any party in said Cause No. B–84,584 shall be and the same are hereby adjudged against the Plaintiff, George W. Brown, Jr. for which the parties and the officers of this Court may have their execution in such form and as often as may be necessary.

THEREUPON, it having been called to the attention of the Court that the City of Port Arthur has heretofore intervened in this cause with leave of the Court and that the Plaintiff, George W. Brown, Jr., did filed a motion to strike said intervention; and, it appearing to the Court, in view of the foregoing adjudication upon the issues in this cause that said intervention of the City of Port Arthur is moot and should be stricken; it is, therefore, further,

ORDERED, that the plea in intervention of the City of Port Arthur, Texas, be and

the same is hereby stricken, at the cost of said intervener; and the Clerk is directed to certify such costs so incurred to the said City of Port Arthur for payment, but no execution shall issue hereon.

TO ALL OF WHICH, in open Court the said George W. Brown, Jr., then and there duly excepted and gave notice of appeal to the Court of Civil Appeals in and for the Ninth Supreme Judicial District of Texas, at Beaumont, which said notice is here and now entered of record.

RENDERED AND ENTERED upon this the 9th day of September, 1965.

/s/ Gordon Gary
JUDGE PRESIDING"

For convenience, the judgment will be considered as two separate judgments, first disposing of appellant's point of error directed at the judgment in the In Rem proceeding, Cause No. B–84,791. The sole appellant is George W. Brown, Jr.

The fifth paragraph of the judgment of the trial court in Cause No. B–84,791 provides:

"That the Jefferson County Bridge Bonds, Series 1965, more specifically described in Plaintiff's Original Petition, be and they are hereby in all things validated and approved.

"This Judgment, Order and Decree shall be forever binding and conclusive against all persons or entities interested in or affected by, the issuance of the aforesaid bonds, whether mentioned in and served with notice of these proceedings, or included in the description 'all property owners, taxpayers, citizens and others having or claiming any rights, title or interest in any property or funds to be affected by the issuance of the securities or affected in any way thereby,' and this Judgment shall constitute a permanent injunction against the institution by any person or entity (including George W. Brown, Jr.) of any action or proceeding contesting the validity of the aforesaid bonds, or the

validity of any provision made for the security thereof or payment of same, the interest thereon, *or the purpose and project for which the proceeds thereof are to be expended.*

"The prior interlocutory order heretofore noted, is here and now, to the extent herein recited, adopted by the Court in said Cause No. B–84,791, upon this the 7th day of September, 1965; and the Court, further orders that all costs of this proceeding to validate said bonds shall be taxed against Jefferson County, Texas, and the Clerk of this Court is directed to certify the said costs to the Commissioners' Court of Jefferson County, Texas, for payment, but no execution shall ever issue thereon." (emphasis added)

█ Appellant contends that the clause "or the purpose and project for which the proceeds thereof are to be expended" would enjoin actions contesting illegal expenditures of the proceeds from the sale of such bonds.

In Conclusion of Law No. 3 contained in the judgment, the court said:

"After the sale of said bonds and the receipt of the proceeds thereof, the expenditure of said proceeds for the erection and construction of a bridge lying wholly within Jefferson County, Texas, will constitute a legal expenditure thereof;"

In order that there may be no question of clarity, paragraph fifth of the judgment is reformed so that in lieu of the clause "or the purpose and project for which the proceeds thereof are to be expended", there is substituted the following: "or the legal expenditure in a lawful manner of the proceeds from said bonds for the erection and construction of said bridge."

As so reformed, the entire judgment of the trial court in Cause No. B–84,791 is affirmed.

Hereinafter, we consider appellant's points of error directed at the judgment of the trial court in Cause No. B–84,584.

Appellant's first point of error is as follows:

"In sustaining the County's special exception and dismissing Brown's cause, both affirmatively and defensively, as premature, the trial court erred in that Brown sought a declaration of the invalidity of a present and existing obligation assumed by the County and to enjoin the performance of same, the expenditure of public funds and the incurrence of public indebtedness pursuant thereto."

In his prayer, the appellant prays for declaration as to the validity of the resolutions of the Commissioners' Court of Jefferson County, Texas, of April 1963 and July 1965, or, alternatively, Subdivisions (a) thereof as being null and void under the Constitution of the State of Texas and that any performance by appellees of the obligations assumed therein and thereunder is and will be unlawful, followed by a prayer for permanent injunction commanding appellees to desist and refrain from performing the obligations and agreements undertaken by Jefferson County pursuant to the said resolutions, etc. This point of error will be considered in connection with appellant's second point of error, which is:

"The trial court erred in failing to hold null and void as a matter of law the County's resolution and agreement obligating the County to hold and save the United States free from damages that may result from the construction of the Sabine-Neches Waterway Project."

The resolution of the Commissioners' Court of April 4, 1963, which was repealed and set aside on July 16, 1965, by such Commissioners' Court, was void and admitted so to be because it violated Art. 11, § 7 of the Constitution of the State of Texas, Vernon's Ann.St. The agreement and resolution of the Commissioners' Court of Jefferson County, Texas, of July 16, 1965, is attacked by appellant. With the County Judge and all Commissioners present, together with the Clerk, the contents of same are as follows:

"Thereupon, upon motion of Commissioner Ellison and seconded by Commissioner Lawson, and unanimously adopted, the following resolution was passed:

WHEREAS, heretofore, and on or about the 4th day of April, 1963, the Commissioners Court of Jefferson County, Texas, did duly pass and adopt a certain resolution wherein and whereby Jefferson County, Texas, as a local interest, did agree to provide certain specified items of cooperation in order to assist the United States of America in the replacement of the Pleasure Island Bridge at Port Arthur as a part of the improvement of the Sabine-Neches Waterway, as authorized by the River and Harbor Act of 1962, Document No. 553, 87th Congress, Second Session, all as more fully appears from the face of said resolution now on file and of record in the minutes of the Commissioners Court of Jefferson County, Texas, in Volume 65 at Page 117, which said resolution is incorporated herein by reference for all intents and purposes as fully as if set out herein in haec verba; and,

WHEREAS, thereafter, George W. Brown, Jr., caused to be filed a certain Cause No. B–84,584, upon the docket of the 60th District Court of Jefferson County, Texas, entitled 'George W. Brown, Jr. v. Jefferson County, Texas, et al' wherein he sought a declaratory judgment that said resolution of April 4, 1963, heretofore mentioned, was invalid and void and also sought an injunction to restrain Jefferson County, Texas, from participating therein, all as more fully appears from the face of said original petition in said cause above referred to which is incorporated herein by reference for all intents and

purposes as fully as if set out herein in haec verba; and,

WHEREAS, Jefferson County, Texas, and the other defendants did file a plea in abatement and an answer therein which said plea in abatement is set out herein in haec verba; and,

WHEREAS, the Commissioners Court of Jefferson County, Texas, is desirous of removing all question as to the validity of the action heretofore taken upon April 4, 1963, in the adoption of said resolution and in the undertakings therein mentioned by the repeal of said resolution; now, therefore, in consideration of the premises,

BE IT ORDERED BY THE COMMISSIONERS COURT OF JEFFERSON COUNTY, TEXAS:

*FIRST:*

Said resolution of the Commissioners Court of Jefferson County, Texas, dated April 4, 1963, wherein the said Commissioners Court bound and obligated Jefferson County, Texas, to certain specified items of 'local cooperation', as therein set forth, be and the same is hereby repealed, set aside, and henceforth the same shall stand for naught.

*SECOND:*

In lieu of the resolution of April 4, 1963, repealed by section one of this order, the following order is adopted:

WHEREAS, the United States of America has undertaken or is about to undertake the replacement of the Pleasure Island Bridge at Port Arthur as a part of the improvement of the Sabine-Neches Waterway, as authorized by the River and Harbor Act of 1962, House Document No. 553, 87th Congress, Second Session,

WHEREAS, said Act requires that prior to construction, local interests agree to provide certain specified items of local cooperation,

WHEREAS, Jefferson County is a duly organized and functioning political subdivision of the State of Texas, acting by and through the Commissioners Court of Jefferson County, Texas, and is a local interest empowered to comply with the local cooperation required by said Act,

WHEREAS, Jefferson County, Texas, desires to provide the required items of local cooperation,

NOW THEREFORE, in consideration of the premises, be it ORDERED by the Commissioners Court of Jefferson County, Texas, that the said Jefferson County, does hereby agree to:

a. Hold and save the United States free from damages that may result from construction of the project. During each year while there is any liability by reason of the agreement contained in this subsection of this resolution, including the calendar year 1965, the Commissioners' Court of said County shall compute and ascertain the rate and amount of ad valorem tax, based on the latest approved tax rolls of said County, with full allowances being amade for tax delinquencies and costs of tax collection, which will be sufficient to raise and produce the money required to pay any sums which may be or become due during any such year, in no instance to be less than two (2%) per cent of such obligation, together with all interest thereon, because of the obligation herein assumed. Said rate and amount of ad valorem tax is hereby ordered to be levied and is hereby levied against all taxable property in said County for each year while any liability exists by reason of the obligation undertaken by this subsection of this resolution, and said ad valorem tax shall be assessed and collected each such year until all of the obligations herein incurred shall have been discharged and all liability hereunder discharged.

b. Accomplish, without cost to the United States, all alterations of pipelines, utility lines, cables, and highway facilities, when and as required for construction of the project;

c. Furnish without cost to the United States, all necessary rights-of-way and easements required for relocating the highway bridge at Port Arthur and contribute in cash, a share of the construction costs of the relocation computed in accordance with the principles of Section 6 of the Bridge Alteration Act of 21 June 1940, as amended by the Act of 16 July 1952, a sum presently estimated at $220,000 for the expired service life of the existing bridge. This estimate, however, does not include the costs for special benefits and betterments attributable to highway use, which depend upon final design, and are not known at this time;

d. Assume all obligations of ownership, operation, and maintenance of the replacement highway bridge at Port Arthur upon its completion.

/s/ Chester C. Young
County Judge, Jefferson County, Texas

/s/ Dick Scurlock
Commissioner Precinct No. 1

/s/ T. B. Ellison
Commissioner Precinct No. 2

/s/ Lamar Lawson
Commissioner Precinct No. 3

/s/ Ted R. Walker
Commissioner Precinct No. 4

ATTEST: Seal

/s/ Fred G. Hill
County Clerk
By R. L. Barnes Deputy"

In the foregoing agreement and resolution, Jefferson County agreed to: "hold and save the United States free from damages that may result from construction of the proj-ect." At the same time, the Commissioners' Court made provision for levying and collecting sufficient tax to pay the interest on such debt and provide at least two per cent (2%) as a sinking fund "during each year while there is any liability by reason of the agreement contained in this subsection of this resolution," expressly providing for the method of ascertaining the rate and amount of such tax for each and every year until all of those obligations incurred by Jefferson County shall have been discharged. The project was a bridge across a navigable canal. Jefferson County had the legal authority to pay all cost and build the bridge over this navigable waterway with permission and approval by the United States of America.

Instead, the United States of America is paying approximately three-fourths of the cost of construction of the new bridge. Upon completion, it is to be owned, operated and maintained by Jefferson County. Attached to and made a part of Plaintiff's First Amended Petition is House Document No. 553, upon which basis the United States of America authorized the Sabine-Neches Waterway Project, at a cost to it of over $20,000,000. The plan of improvement includes removal of the existing obstructive bascule bridge crossing the Sabine-Neches Canal at Port Arthur and construction of a new fixed span bridge with a minimum vertical clearance of 138 feet above mean low tide with a navigation span provided with minimum horizontal clearance of 400 feet. The present bascule span of the Port Arthur bridge on the west side of the canal has a horizontal clearance of 200 feet between fenders with view of approaching vessels obstructed, the east pier dividing the navigable channel. All reports concluded with the finding that the existing bridge is an unreasonable obstruction to navigation on the present channel, as well as the channel as to be improved. The Federal share of the bridge relocation and construction cost was estimated at $4,608,000, plus $235,000. Costs of rights-of-way and easements necessary for construc-

tion of the new bridge were to be borne entirely by local interests (Jefferson County), plus $220,000 plus additional cost of improving design of bridge to carry heavy traffic, etc. Local interests prior to construction were to agree to assume the obligations set forth in the resolution and agreement of Jefferson County of 1965. All Federal agencies and State agencies approved this plan as being feasible and in the public interest. By passing the $1,-500,000 bond issue, the voters of Jefferson County approved the bridge project.

The attack of appellant under his second point of error is that the agreement and resolution of the Commissioners' Court of Jefferson County dated July 16, 1965, is null and void under Art. 11, § 7 and Art. 8, § 9 of the Constitution of the State of Texas.

The applicable provision of Art. 11, § 7 (omitting the "seawall" portion in the first sentence) is as follows:

"* * * But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent (2%) as a sinking fund; * * *"

In Stevenson v. Blake, 131 Tex. 103, 113 S.W.2d 525 (Com.App., Sec. A, 1938, opin. adopted by S.Ct.), the word "debt" is defined:

"The term 'debt' as used in said clause of the Constitution 'means any pecuniary obligation imposed by contract, except such as were, at the date of the contract, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year, or out of some fund then within the immediate control of the corporation.' "

Without complying with this Constitutional requirement, a contract creating such a debt is void. Texas & N. O. R. R. Co. v. Galveston County, 141 Tex. 34, 169 S.W.2d 713 (Com.App.1943) holds that an indemnity contract by Galveston County was invalid solely because of its failure to make provision for the levy of a tax to provide for the payment of the obligation therein incurred. That is the only holding in such case. To quote therefrom, the last paragraph is:

"[5] We hold the clause under consideration is void because it violates Art. XI, § 7, of the Constitution of Texas. It is unnecessary for us to consider whether it violates other provisions thereof."

The Supreme Court was passing upon an indemnity agreement by which Galveston County would indemnify and save harmless the railroad company from any liability by reason of injury to travelers upon the roadway portion of the drawbridge reserved for county use, caused by the drawbridge being raised. The basis for its holding is stated by the Supreme Court:

"Manifestly, the parties making the contract could not then determine either when the county would become obligated under the clause in controversy or the extent of any such obligation. So far as they could foresee, it might accrue in a few days or not until after the lapse of centuries; it might amount to a few dollars or to many thousands. * * * Therefore, the parties could not contemplate, from any reasonable standpoint, that the indemnity clause would not some time fix a debt on the county in violation of the Constitution. In this connection, another provision of the contract is significant. It is that any amount which may become due by one party to any other party shall bear interest at 6 per cent per annum until paid, if not paid within sixty days after written demand therefor. This clearly includes any demand that might arise against the county under the indemnity clause. In language as plain

as can be used, it says that any such indemnity demand, unsatisfied for sixty days, shall become an interest-bearing debt, *yet there is not even a suggestion of any provision to pay the accrued interest and two per cent of the principal each year.*" (emphasis added)

The Supreme Court held that under Art. 11, § 7 that when a county is spending public money and cannot pay a debt out of current revenues or from funds within the immediate control of the county, that the only alternative method to pay that debt is that provision be made at the time it is incurred to pay interest and at least two per cent of the principal each year. "If this provision is not made, the 'debt' is a nullity. This is the requirement of Art. 11, § 7, supra. Its language is unequivocal. It voices the *public policy* demand so clearly that no arm or agency of government should attempt to deny it." (Emphasis ours) The Supreme Court affirmed the judgments of the courts below but did not affirm the holding of the Court of Civil Appeals and the trial court that the contract between Galveston County and the railroad was a lending of the credit of the county to a corporation in violation of Art. 3, § 52 of the Constitution of the State of Texas.

Appellant urges:

"The County's agreement to hold and save the United States free from damages that may result from the construction of the project is null and void under the Constitution of Texas, Art. XI, Section 7, in that it creates an obligation on behalf of the County which cannot be funded for it is unlimited in amount and undeterminable as to time of accrual. Texas and N. O. R. R. Co. v. Galveston County [141 Tex. 34], 169 S.W.2d 713 (Texas 1943). There, in striking down such an indemnity agreement as beyond the constitutional powers of a Texas county, the Texas Supreme Court held such an obligation to be vicious from the standpoint of

public policy and constitutionally null and void."

Appellant refers to parts of such opinion. On pages 715 and 716, the court said:

"Thus, by the terms of the indemnity clause, there was attempted to be created for Galveston County for more than thirty generations a continuing hazard that its taxpayers might be confronted with an obligation growing out of the negligent operation of the drawbridge which they could not pay out of current funds or out of funds then within their immediate control. We think the indefiniteness of the clause as to what obligation may arise thereunder renders it more vicious, from the standpoint of public policy, than if it had named a sum of money to be paid at a given time but clearly beyond the power of the county to pay out of available funds. Surely the size of an obligation is a controlling factor to be considered in measuring ability to pay."

Such language of the Supreme Court in connection with other parts of its opinion reiterates that when Galveston County created a debt without a provision at the time it was incurred to pay interest and at least two per cent (2%) of the principal each year that the debt was a "nullity", for that sole reason, when it could not pay that debt out of current funds or out of funds then within its immediate control. Conversely, the Supreme Court held that when a county creates such a debt and provides at that time "for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent (2%) as a sinking fund" that such debt is lawful.

■ In Subdivision (a) of the resolution and agreement of July 16, 1965, of Jefferson County, provision is made for the levy of a tax as required under Art. 11, § 7 of the Constitution. Appellants contend:

"It is the creation of a void debt or obligation that is attacked in Brown's

cause. That it is the creation, not merely the payment of such an unlimited obligation that renders the obligation invalid as clear from the facts and holdings of the Galveston County case."

Indemnity agreements between private parties, unlimited as to amount of damages and with the time of accrual indeterminate are valid. For instance, in Houston & T. C. R. Co. v. Diamond Press Brick Co., 111 Tex. 18, 222 S.W. 204, 226 S.W. 140 (S.Ct.1920), it was held that the indemnity agreement of Diamond Press Brick Co. to save the railroad company "harmless from any and all claims for damages" arising, not only out of the construction and operation of a spur track, but out of its maintenance as well, was legal. Similar "hold harmless" agreements have been held valid by the Supreme Court of this State in Spence & Howe Construction Co. v. Gulf Oil Corp., 365 S.W.2d 631 (S.Ct.1963); Ohio Oil Company v. Smith, 365 S.W.2d 621 (S.Ct.1963); Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775 (1957).

■ Such an agreement and resolution by Jefferson County to indemnify the United States of America is valid under the plain, clear and unambiguous language of the constitutional provision Art. 11, § 7, to which effect must be given. Texas & N. O. R. R. Co. v. Galveston County, supra. As said in Carpenter v. Sheppard, 135 Tex. 114, 145 S.W.2d 562 (Oct. 4, 1940):

"* * * The clear policy of this State with respect to that matter is plainly expressed therein. The people have the right to change that policy if they desire. That right does not rest either with the courts or with any other branch of the State Government. Courts should presume that the people intended to do precisely what they have done in adopting those amendments. This presumption should be indulged in willingly, and not grudgingly. The courts are not concerned with the wisdom of a constitutional amendment.

Courts need not exert their ingenuity to find reasons to thwart the intention of the people clearly expressed in the Constitution, which is the supreme law of the land. When this policy so expressed is established, it 'supplants all other laws and rules that are inconsistent with it.' Gillespie v. Lightfoot, 103 Tex. 359, 125 S.W. 799, 801."

■ Recurring to appellant's argument that Jefferson County's obligation incurred in such 1965 resolution is void because the obligations incurred could not be constitutionally funded as of the time of its creation, because the amount of the debt was unknown and the time of its accrual undeterminable: In Basset v. City of El Paso, 88 Tex. 168, 30 S.W. 893, 895 (1895), it was held that Art. 11, § 7 did not require in express terms the levy of a fixed rate or tax, to be collected each year during the life of a debt, without reference to the different sums that would be annually raised thereby, but such provision of the Constitution only requires that provision be made for the annual collection by taxation of (1) the interest, and (2) a certain fund as sinking fund. As stated in Mitchell County v. City Nat. Bank, 91 Tex. 361, 43 S.W. 880, 883 (1898):

"It was not the purpose of the convention in adopting the foregoing article to require that a city or county should, at the time of creating a debt, ascertain the rate per cent required to be levied upon the taxable values of the county in order to raise a sufficient sum to pay the interest and provide a sinking fund upon that debt, and to actually levy that rate of tax at the time * * *" [and, quoting from Basset, supra.]

" 'The language and purpose of these provisions [of the constitution] seem to be satisfied by an order providing for the annual collection by taxation of a sufficient sum to pay the interest thereon, and create a sinking fund, etc., though it does not fix the rate of per

cent. of taxation for each year by which such sum is to be collected, but leaves the fixing of such rate for each successive year to the commissioners' court or city council. * * *'

"What the constitution requires is that provision shall be made at the time, or shall have been previously made, by which the rate of tax to be levied is so definitely fixed—as was done in the case last cited—that it becomes merely a ministerial act to determine the rate to be levied. * * *"

See also: City of Aransas Pass v. Keeling, 112 Tex. 339, 247 S.W. 818, 821 (1923).

Appellant urges that it is undeterminable as to time of accrual of any damages under this hold harmless agreement. In the 1965 agreement and resolution the indemnity agreement is limited to damages that may result from construction of the project with the final provision that Jefferson County assume all obligations of ownership, operation and maintenance of the replacement highway bridge at Port Arthur *upon its completion.* Indemnity as to the United States is limited to the period of time when damages may result from the construction of the project. No exact number of days or years is stated for the construction of the project, but, from common knowledge and experience, certainly two years or so should be sufficient time to construct the bridge, with resulting damages determined in a comparatively short period of time. The obligation to the United States of America would not run for 999 years, as in the case of Texas & N. O. R. R. Co. v. Galveston County, supra.

In effect, appellant in this case is making the same argument that the appellants made in Anderson v. Parsley, 37 S.W.2d 358 (Tex.Civ.App.1931, wr. ref. by S.Ct.) in which case appellants in their motion for rehearing (page 366) urged:

"* * * We cannot conceive how your Honors can hold that the power to tax in the creation of a debt can come into existence until the amounts of the debt, its maturity, etc., have been determined."

That authoritative decision held:

"The exact amount of a debt, including interest thereon and time of maturity, is rarely known at the time the debt is authorized. There is always an element of uncertainty as to the maintenance of subsisting taxable values throughout the life of either a bond or warrant debt. If values are increased, then a reduction in the tax rate is permissible and authorized, so long as it does not impair the obligation of a contract. This principle was recognized by the Supreme Court in City of Aransas Pass v. Keeling, 112 Tex. 339, 348, 247 S.W. 818, in an able opinion by Justice Greenwood."

The resolution and agreement of 1965 by the Commissioners' Court of Jefferson County is by its nature and terms an agreement or contract. The Texas Uniform Declaratory Judgments Act provides in pertinent part:

"Any person interested under a * * written contract, or other writings constituting a contract, or whose rights, status, of other legal relations are affected by a Statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, Statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."

"A contract may be construed either before or after there has been a breach thereof." Texas Civil Statutes, Art. 2524-1, §§ 2 and 3.

Such July 1965 resolution creates a debt and an obligation against the taxable properties of Jefferson County supported by the levy of a tax as set forth in Art. 11, § 7 of the Constitution of the State of Texas.

Brown, as a taxpayer, has a present and justiciable interest in the the validity of such resolution and agreement. Brown alleged:

"While this suit has been pending, Defendants have performed certain of the obligations assumed under their resolution of April 4, 1963. The Defendants intend to, and unless enjoined by this Court the Defendant will perform and discharge the obligations they have incurred under and by virtue of said resolution and agreement of July 16, 1965. In doing so they will fund the same, incur expenses, expend the public moneys of Jefferson County, and subject to indebtedness and taxation the properties of the County, all to the detriment of Plaintiff as a taxpayer of Jefferson County. As the result thereof, Plaintiff will suffer direct and irreparable injury, loss and damage, for which Plaintiff has no adequate remedy at law."

The obligations created in and by virtue of the 1965 resolution, including the tax supported obligation to hold and save harmless the United States, have been created and now exist. If any damages are sustained, as a result of the construction of the project, the amount will be known in the future. Construction of the bridge has not begun, according to Brown's pleadings and exhibits attached thereto and made a part thereof. Appellant has no allegation that the tax levy, which has not been made, would be illegal because of being in excess of the constitutional provision in Art. 8, § 9 of the Constitution of Texas or any statutory tax maximum placed upon counties, but does allege the amount of damages is unknown.

As hereinbefore stated, that part of the judgment of the trial court relating to original Cause No. B–84,791 entitled "Jefferson County, Texas v. All Persons Interested in or Affected by the Issuance of the Securities Described in Plaintiffs' Original Petition" is reformed as hereinbefore stated and, as reformed, the judgment of the trial court is affirmed.

Appellant Brown is entitled to a declaratory judgment as hereinafter set forth:

As to the judgment of the trial court relating to the original Cause No. B–84,584, styled "George W. Brown, Jr. v. Jefferson County, Texas, et al", the judgment of the trial court dismissing said cause is reversed and judgment here rendered as the court below should have rendered judgment, to-wit:

■ First, it is declared that the debts assumed by Jefferson County by Section (a) of the resolution of 1965 are valid and lawful and that Jefferson County may expend public funds in payment thereof by levying and collecting a tax each year necessary to pay the interest and set up the sinking fund each year as provided in Section (a) of the 1965 resolution with such ad valorem taxes being set and fixed within the limit prescribed by law and Art. 8, § 9 of the Constitution of the State of Texas. This court construes such Section (a) providing for the levy of taxes and method of payment of any damages with the provision that "the Commissioners' Court of said County shall compute and ascertain the rate and amount of ad valorem tax", etc., means the Commissioners' Court will act within limits prescribed by law and without violating the constitutional limit of taxation fixed by Art. 8, § 9 of the Constitution of the State of Texas.

Second, it is declared that the 1963 resolution and agreement of Jefferson County as to Section (a) thereof is void and if any damages have been sustained thereunder prior to the repeal of such 1963 resolution by the resolution and agreement of July 16, 1965, such debts are void.

Third, the judgment of the trial court dismissing the intervention of the City of Port Arthur is affirmed.

STEPHENSON, Justice (dissenting in part).

I concur with the majority opinion in its determination that the declaratory judgment suit filed by George W. Brown, Jr., should not have been dismissed, and also in the portion of the opinion validating the bond issue. I do not concur with that portion of the opinion dealing with "hold harmless agreement" or "indemnity agreement" made by Jefferson County with the United States Government.

In my opinion the resolution adopted by the Commissioners' Court of Jefferson County July 16, 1965, in which Jefferson County agreed to "hold and save the United States free from damages that may result from construction of the project" is void because it violates Art. 11, § 7 of the Constitution of the State of Texas and because it is against public policy.

This order is void under Art. 11, § 7, supra, because the amount of the debt assumed by Jefferson County is unlimited in amount. The amount having no limit, it is impossible for Jefferson County to provide for the collection of at least 2% of the debt each year as a sinking fund. The mere statement in the resolution that a tax was levied does not satisfy this requirement. The amount of the debt assumed by Jefferson County might well exceed the legal taxing limit placed upon the County.

The judgment rendered by the Honorable Joe J. Fisher, in Cause No. 4915, styled, "Levingston Shipbuilding Co. v. The Honorable Stephen Ailes, in the United States District Court for the Eastern District of Texas, Beaumont Division, made no determination that Levingston Shipbuilding Co. could not recover damages because of the construction of the proposed bridge. The only decision made in such cause was that Levingston Shipbuilding Co. was not entitled to enjoin the construction of the bridge. In fact, such judgment makes a specific finding that Levingston Shipbuilding Co. will be damaged by the construction of the bridge. Such finding being set forth as follows:

"This Court finds that since the Sabine-Neches Canal is the only feasible access that the Plaintiff has to the Gulf of Mexico, the minimum vertical clearance of 138 feet above mean low tide, is not adequate for the Plaintiff's use in constructing and repairing mobile off-shore drilling rigs of a height in excess of 138 feet, and is therefore an obstruction to Plaintiff's established and potential use of the waterway, and *Plaintiff will suffer an injury special and peculiar in kind because of its use not being protected.*" (emphasis added)

The requirement that Jefferson County enter into an indemnity agreement as a condition precedent to the construction of the bridge by the United States Government, indicates that there is danger of liability. The extent of such liability cannot be known at this time, and there is a possibility that this obligation could bankrupt Jefferson County. Should a final judgment be obtained by Levingston Shipbuilding Co., it would become an obligation due immediately and not one which could be extended over a long period of time.

I do not place the narrow construction of the Texas & N. O. R. R. Co. v. Galveston County case, 141 Tex. 34, 169 S.W.2d 713, as set forth in the majority opinion. The portion of the opinion quoted by the majority that the clause under consideration was void because it violated Art. 11, § 7, supra, does not indicate to me that the Commission of Appeals was holding such clause to be void only because of the failure to levy a tax. It is not so stated in such opinion, and my construction of such opinion is that the clause under consideration in such case was void under Art. 11, § 7, supra, for several reasons, one being because the amount was unlimited. These expressions are made by the Commission of Appeals in such opinion:

"Manifestly, the parties making the contract could not then determine either when the county would become

**256**

obligated under the clause in controversy *or the extent of any such obligation.* So far as they could foresee, it might accrue in a few days or not until after the lapse of centuries; *it might amount to a few dollars or to many thousands."* (emphasis added)

We are bound to follow this Commission of Appeals case, especially in view of the fact that we have been cited no cases holding that a county may enter into an indemnity agreement where the amount is unlimited. This is not the situation which existed in the case of Anderson v. Parsley, 37 S.W.2d 358, in which it was stated that the exact amount of the debt, including interest thereon and time of maturity, was rarely known at the time the debt was authorized. Such case involved the construction of a courthouse, and even though the "exact" amount might not be known at the time of the levy of the tax, such ultimate amount was to be determined by the Commissioners' Court and was not for an unlimited amount. In the present case, the Commissioners' Court of Jefferson County has no means of controlling the ultimate debt which the indemnity agreement created. Such debt depending only upon the amount of damages the Levingston Shipbuilding Co. or anyone else might be able to establish, the extent of which it is impossible to foresee at this time.

It has been suggested that the liability of Jefferson County was limited in time to the construction period only. It is not so stated in the resolution, and no limitation as to time is prescribed. The provision "that may result from construction of the project" is not a limitation as to time, but is clearly defining only the nature of the damages being indemnified by Jefferson County.

The majority opinion, if upheld by the Supreme Court, would establish once and for all, the validity of the indemnity agreement, and in the event of future litigation this question would be foreclosed. If a judgment or judgments for damages because of the construction of the bridge is or are obtained, the legality of the indemnity agreement could not be questioned.